JOSEPH VAN EMAN, Plaintiff in Error, *vs.* STANCHFIELD & BROWN and JOHN DUDLEY, Defendants in Error.

ERROR TO THE DISTRICT COURT OF HENNEPIN COUNTY.

[1 Written instruments used on the trial of an action, which make use of no language out of the ordinary signification, and contain no technical term or terms of art requiring explanation by extrinsic evidence, should be interpreted and construed by the Court, and it is error to leave such interpretation or construction to the jury.

Where a bill of sale contained the following clause, without punctuation of any kind, viz. : "I do hereby sell assign transfer and set over and convey to Y all the logs belonging to me in the Mississippi river and along the shores thereof and also in booms above the Falls of St. Anthony of the following marks viz.: [naming them] containing one million feet more or less " * * *Held*, That as the whole constituted but one sentence, and the words " *and also in booms above the Falls of St. Anthony* " were in no way separated or distinguished from the words preceding or following them, they qualify all the logs sold, and limit the sale to such as were above the Falls of Saint Anthony.

D. A. SECOMBE, Counsel for Plaintiff in Error.

F. R. E. CORNELL, Counsel for Defendant in Error.

*By the Court.*—EMMETT, C. J.—The facts of this case, so far at least as they bear upon the point on which the decision is made to turn, may be stated as follows :

On the 18th day of March, A. D., 1858, one S. B. Olmstead entered into an agreement with the Defendants in words and figures following :

"This agreement made and entered into this day at St. Anthony, March 18, 1858, between S. B. Olmstead, of the first part, and Stanchfield & Brown and John Dudley, of the second part. Whereas the party of the first part has this day sold all his logs and all the logs he controls from St. Paul to the head of Lake Pepin, or that may pass St. Paul through the year 1858, except what logs of his are now in Lake Pepin boom, unto the party of the second part, at the rate of four dollars and fifty cents per thousand, and it is further agreed by the party of the second part to make payment as follows,

viz.: First, to assume and to take up the following note given by S. B. Olmstead to J. & A. J. Chapman, dated August 13, 1857, for one thousand dollars, made payable at the banking house of Bostwick, Pease & Co., now in the hands of Alexander Ferguson ; also the interest thereon, and the same to be paid on the first day of December, 1858. It is further agreed after the above note has been paid, if there is any more due the first party from the second party, it shall be paid as follows, viz.: in logs delivered at Red Wing not rafted, at the rate of seven dollars per thousand, or at the foot of Lake Pepin boom, rafted with plugs and lock-downs, at the rate of eight dollars per thousand, the same to be put in running order, with oar stems and oar blades, &c. It is further agreed that if the second party does not receive of the first party logs enough to cover the first named payment of the note and interest, that the [first] party shall turn out to the party of the second part logs enough at other places to cover the full amount of said note and interest, due December, 1858.

(Signed)                     "S. B. OLMSTEAD,
                             "STANCHFIELD & BROWN,
                             "JOHN DUDLEY.
" Witness,
    " GEO. S. BRADFORD,
    " ALEXANDER FERGUSON."

On the same day of the making of this agreement, and evidently at the same time, the Defendants executed and delivered to the said Alexander Ferguson (who appears to have been present at the making of, and witnessed the other agreement) an instrument in writing, in these words :

"Whereas S. B. Olmstead has this day, March 18th, 1858, sold and entered into a contract with Stanchfield & Brown and John Dudley for all his logs from St. Paul to head of Lake Pepin, the said Stanchfield & Brown and John Dudley have agreed to assume and pay a certain note given to A. & J. Chapman by S. B. Olmstead, now held by Alexander Ferguson for $1,000, and we have agreed to pay the said note to Alexander Ferguson on the first day of December, 1858, without interest after this date (March 18, '58) to Dec. 1st, 1858,

and if not paid at maturity, we agree to pay the said Fergu-
son one per cent. per month until paid.

(Signed)                    " STANCHFIELD & BROWN,
                            " JOHN DUDLEY."

Some ten days prior to the making of these agreements the
said Olmstead, as collateral security for a debt due to one
Isaac Crowe and one John L. Young, gave to said Young a
bill of sale as follows:

" I, S. B. Olmstead, of Fort Ripley in the county of Crow
Wing territory of Minnesota for and in consideration of one
dollar to me in hand paid and divers other good and suffi-
cient considerations me moving and of the indebtedness of
said Olmstead to Isaac Crowe and John L. Young of the city
of St. Anthony I do hereby sell assign transfer and set over
and convey to said Young all the logs belonging to and
owned by me in the Mississippi river and along the shores
thereof and also in booms above the Falls of St. Anthony of
the following marks viz: [here follow the marks] containing
one million feet more or less except the logs due I. F. Wood-
man of Minneapolis out of the above to have and to hold
forever.   Witness my hand and seal this 8th day of March
1858.

(Signed)                    " S. B. OLMSTEAD.   [SEAL.]
" In presence of
" C. DRAPER,
" STEPHEN EMERSON."

Before the making of the agreement on the part of the De-
fendants, they, in gathering logs for the different drivers, had
taken possession of a large quantity of the logs mentioned in
their agreement, and they had rafted, sent down the river and
sold at least 200,000 feet of them (about sufficient to pay the
Chapman note) before they had notice of Young's claiming
them.   Young afterwards laid claim to the proceeds of the
logs sold, and the Defendants, with Olmstead's consent, upon
his order in fact, paid them over to Young, and not to Fergu-
son, the holder of the note, Olmstead stating at the time that
" he had previously sold logs to Young."   Ferguson, after de-
manding payment of the Defendants, according to their agree-
ment with him, but without success, transferred the note and

agreement to the Plaintiff, who brings this action to recover the amount of the note and interest, setting forth the making of the note by Olmstead, and the agreements signed by Defendants above recited, and alleging the transfers to himself.

The Defendants answer separately, setting forth as a common defence, however, that Olmstead falsely and fraudulently represented to them, that he had title to the logs intended to be sold to them, thereby inducing them to enter into the agreement before mentioned, when in fact he had previously sold all of said logs to Young; and that they took nothing by and never received any logs under their agreement with him.

The Plaintiff undertakes to reconcile these different agreements made by Olmstead, upon the theory that the one with Young was confined to such of the logs as were *above* the Falls of St. Anthony, while that with Defendants embraced such only as were below or between St. Paul and the head of Lake Pepin, and the Court was requested to instruct the jury that such was the fair construction of the Young contract. But this instruction the Court refused to give, and thereupon the Plaintiff excepted.

. This refusal must be understood either as leaving the whole question of the construction or interpretation of this contract to the jury, or else as instructing them that the contract embraced the logs below the Falls of St. Anthony, as well as those above. If the former be the true interpretation of the ruling of the judge on this point, then we think he erred, because it is the province of the Court, and not of the jury to construe and interpret the language of contracts. And that the judge intended to leave this question entirely to the jury is manifest, we think, from his afterwards instructing them upon the request of the Defendants, "That if the jury are satisfied *from the evidence* that the logs which Olmstead claimed to sell to Defendants, had been by him theretofore sold to Isaac Crowe and John L. Young, then there is a total failure or want of consideration for the alleged agreement of Defendants to assume and pay the note in suit and Plaintiff cannot recover." This was in substance directing the jury to construe the instrument according to the evidence, a direction which might result in a construction different from the plain

Van Eman v. Stanchfield et al.

import of the language used; whereas it should have been construed and interpreted by the Court upon inspection only, unless (as was not the case here) there were terms of art, or other unusual language employed or used out of its ordinary signification, requiring explanation by extrinsic evidence. As this contract stood, there was nothing in the least affecting its meaning which could properly be left to the jury, unless, as was hinted at in the argument, it had in some manner been changed since it was executed. But even in that event, it would have been for the jury simply to find what change had been made, or rather how the contract was originally made, leaving the Court to instruct them as to its meaning or construction before the alteration.

On the other hand, we think the judge equally in error, if, as was argued by the Plaintiff's counsel, he meant the jury to understand that the contract did embrace as well the logs below the Falls of St. Anthony as those above. The evidence is pretty conclusive that there had been no alteration of this instrument after it was executed, and we have every reason to believe that it is correctly set out in the paper books furnished us. Assuming, therefore, that we have a literal copy before us, we cannot resist the conclusion that the language " *above the Falls of St. Anthony*" qualifies all of the preceding portion of the sentence, and applies to all the logs embraced in the sale, just as do the log marks which immediately follow, and about which there is no difference of opinion. It is observable from the copy above set forth, that the whole instrument, from the beginning to the *habendum* clause at the close, is made up of a single sentence only, without even a comma or other punctuation mark, except the colon following the abbreviation " viz." But to give the sentence under consideration such a construction as the Defendant's claim, it should be preceded and followed by a comma or other like mark, to separate it from the remaining portions of the sentence. It is admitted that the log marks mentioned, and the words " containing one million feet, more or less," both of which occur later in the sentence, apply to all that precedes them, and limit the logs sold to the description and quantity therein mentioned. And why the words " above the Falls of St. An-

thony" should not, or do not apply to all the logs sold also, and thus limit the district or territory in which they were to be found, instead of extending from the sources to the mouth of the Mississippi river, we are unable to understand. They precede the others in the sentence, as before observed, and are not distinguished from them or any other words by any mark or other designation from which such a construction can reasonably be inferred. And we might, with the same propriety, insist that the log marks and the quantity mentioned were also confined to such logs as were "in booms above the Falls," which would make the sale to include all logs belonging to Olmstead in the Mississippi river, from St. Anthony to New Orleans, whatever the marks and quantity, though he had ten million feet, of a hundred different marks ; and to exclude all that were in booms below, and all that were not in booms above the Falls. Such could not have been the intention of the parties. On the contrary, we hold that the plain import of the bill of sale to Young is to sell to him all the logs owned by Olmstead of certain marks, which were above the Falls of St. Anthony, whether they were in the river, or along the shores thereof, or in booms.

This construction is also consistent with good faith on the part of Olmstead in making his contract with the Defendants, and harmonizes them so that both may stand. Fraud must be shown, we will not presume it. The presumption is in favor of good faith, and we feel it to be our duty to reconcile these several agreements if it can be done consistently with their several terms. We give no weight whatever to anything Olmstead may have done or said after the rights of the Defendants and of Ferguson had accrued. He could not change the interpretation of his contracts by any subsequent act or admission ; nor could the Defendants, after they had sold logs under their contract, and received the proceeds thereof, affect the right of Ferguson or his assigns, or their own liability by paying the proceeds over to Young, even on the order of Olmstead. If they wished to avoid responsibility they might have caused Young and Ferguson to interplead under the statute, but as they assumed to decide for themselves which of the claimants was entitled to the money in their hands, they

have themselves to blame if they were mistaken as to the law.

A new trial must be granted.