*JOSEPH VAN EMAN vs. SAMUEL STANCHFIELD et al.

The complaint avers that S. B. O. made and delivered to the firm of J. & A. J. C. his certain promissory note dated Aug. 13, 1857, payable to their order four months after date, for one thousand dollars; that on the 21st of December, 1857, the payees for a valuable consideration transferred and delivered the same to one A. F., who was the owner, and held the same on the 18th of March, 1858; that on said 18th March, 1858, the defendants entered into a contract with S. B. O., whereby the latter sold to the defendants certain logs, and the defendants agreed to make payment as follows, viz: first to assume and take up the note held by A. F., and the interest thereon, to be paid on the 1st of December, 1858. This contract was signed by the parties and witnessed by A. F. That on the said 18th day of March, 1858, in consideration of said agreement, and to carry out the same, the said defendants made and delivered to said A. F. an agreement in writing, of which the following is a copy: "Whereas, S. B. O. has this day, March 18, 1858, sold and entered into a contract with S. & B. and J. D., [the defendants], for all his logs from St. Paul to head of Lake Pepin, the said S. & B. and J. D. have agreed to assume and pay a certain note now held by A. F., given to A. & A. J. C. by S. B. O., for $1000; and we have agreed to pay the said note to A. F. on the 1st day of December, 1858, without interest after this date (March 18, '58) to December 1st, 1858; and if not paid at maturity, we agree to pay the said A. F. one per cent. per month until paid." That the note mentioned in the agreements is the note first mentioned in the complaint; that after the time mentioned in the contracts for the payment of the note, Dec.

———————
* Mr. Justice Berry being of kin to one of the parties to this suit, took no part in its hearing or determination.

1, 1858, A. F. demanded payment of the defendants; that no part of it has been paid; that after said demand and before the commencement of this action, A. F. sold and delivered the note to this plaintiff, and sold, assigned and transferred to the plaintiff all his interest in and to said contracts, and all his claim and demand arising out of the same against said defendants; that the plaintiff is now the owner and holder of the note. *Held*—that the complaint states facts which constitute a cause of action; that the two contracts mentioned in the complaint were concurrent in point of time and constitute but one transaction; that the sale by S. B. O. was the consideration of both agreements, and the second agreement contains a promise to A. F. to pay him the note; that there is, therefore, a privity of contract between the defendants and A. F., founded upon the consideration from S. B. O. to the defendants; that upon such a state of facts A. F. or his assignee may maintain an action.

Where a negotiable note *payable to order* is transferred *without indorsement*, the holder takes it as a mere chose in action, and while he may maintain an action upon it in his own name, he must prove the transfer to himself if denied, and mere possession is not *prima facie* evidence of ownership.

The rule that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument, applies only between parties to the instrument and their privies.

This action was commenced in the Hennepin County District Court, by the plaintiff, against Samuel Stanchfield and William Brown, late partners as Stanchfield & Brown, and John Dudley, defendants. Issue was joined therein, and the cause came on for trial at the May term of said Court, 1864, before a jury, who returned the following verdict:

"Our verdict rendered in the case of *Van Eman vs. Stanchfield & Brown and Dudley*, is in favor of plaintiff, and that he recover as follows, to-wit:

"Note, $1000......................................................$1000.00
Interest 1 per cent. a month five months........................    50.00
Interest to date after maturity of note, less from March 18 to Dec. 1,
    1858......................................................   392.38
Leaving due...................................................  1442.38"

A motion was made by defendants upon a statement of the case made and allowed, for a new trial; which was overruled, and defendants excepted; thereupon judgment was entered upon the

verdict in favor of plaintiff; from such judgment defendants appeal to this Court.

A sufficient statement of the case appears in the opinion of the Court.

F. R. E. & W. B. CORNELL, D. M. DEMMON and WM. LOCHREN for Appellants.

D. A. SECOMBE for Respondent.

*By the Court*—McMILLAN, J.—The complaint avers that one S. B. Olmstead made and delivered to the firm of J. & A. J. Chapman his certain promissory note, bearing date the 13th day of August, 1857, whereby he promised to pay to the order of said J. & A. J. Chapman five months after the date thereof, the sum of one thousand dollars for value received; that on the 21st of December, 1857, the said payees.for a valuable consideration, sold, transferred and delivered the same to one Alexander Ferguson; that on the 18th of March, 1858, the said Ferguson was the owner and holder of said note; that on the said 18th of March, 1858, the defendants Stanchfield & Brown and Dudley, entered into a contract with said S. B. Olmstead, which is set out in the complaint of which the material parts are as follows: "This agreement made and entered into this day at St. Anthony, March 18, 1858, between S. B. Olmstead of the first part, and Stanchfield & Brown and John Dudley of the second part, whereas the party of the first part has this day sold all his logs, and all the logs he controls from St. Paul to head of Lake Pepin, or that may pass St. Paul through the year 1858, except what logs of his own are now in Lake Pepin Boom, unto the party of the second part, at the rate of four dollars and fifty cents per thousand; and it is further agreed by the party of the second part, to make payment as follows, viz: first, to assume and take up the following note given by S. B. Olmstead to J. & A. J. Chapman, dated August 13th, 1857, for one thousand dollars, made payable at the banking house of Bostwick, Pease & Co., now in the hands of Alex. Ferguson; also

the interest on said note, and the same to be paid on the first day
of December, 1858.   *   *   *

"Witness: GEO. S. BRADFORD,
ALEX. FERGUSON,

"S. B. OLMSTEAD,
STANCHFIELD & BROWN,
JOHN DUDLEY."

That on the said 18th day of March, 1858, in consideration of
the said agreement and to carry out the same, the said Stanchfield
& Brown and John Dudley made, executed and delivered to the
said Alexander Ferguson an agreement in writing of which the
following is a copy:

"Whereas, S. B. Olmstead has this day, March 18, 1858, sold
and entered into a contract with Stanchfield & Brown and John
Dudley, for all his logs from St. Paul to head of Lake Pepin, the
said Stanchfield & Brown and John Dudley have agreed to as-
sume and pay a certain note given to J. & A. J. Chapman by S.
B. Olmstead, now held by Alexander Ferguson, for $1,000, and
we have agreed to pay the said note to Alexander Ferguson on
the first day of December, 1858, without interest after this date,
(March 18, 1858,) to December 1st, 1858, and if not paid at ma-
turity we agree to pay the said Ferguson one per cent. per month
until paid.

"STANCHFIELD & BROWN,
JOHN DUDLEY."

That the note mentioned in the agreement is the note first men-
tioned in the complaint; that after the expiration of the times
mentioned in the contracts for the payment of the note to-wit:
December 1, 1858, Ferguson demanded payment of the defend-
ants; that no part of it has been paid; that after said demand and
before the commencement of this action, Ferguson sold and de-
livered the note to this plaintiff, and sold, assigned and transferred
to the plaintiff all his interest in and to said contracts, and all his
claim and demand arising out of the same against the defendants.
That the plaintiff is now the owner and holder of the note, &c.

The defendants answer separately: Stanchfield & Brown ad-
mit the execution of the agreements, but aver fraud on the part
of Olmstead in the sale to them, and an entire failure of consider-
ation by reason of a prior sale of all the logs to one John L. Young

Van Eman v. Stanchfield et al.

and Isaac Crowe, and deny Ferguson's ownership of the note, and the plaintiff's title to the note and agreements; there is also a denial that they ever made any contract to or with Ferguson to assume, take up or pay the note.   The answer of Dudley is similar, except that it admits the ownership of the note by Ferguson, and denies the execution of the second contract.   The cause was tried before the District Court, and a verdict rendered for the plaintiff. On the trial several exceptions were taken by the defendants to the admission of testimony and to the charge of the Court.

The first question to which we direct our attention is whether the complaint states facts sufficient to constitute a cause of action. The action is based principally upon the two agreements set out in the complaint.   It is contended by the defendants that the first agreement confers no right of action on Ferguson or his assignee, because Ferguson is not a party to the contract, and that no part of the consideration moved from him; and that the second agreement is void for want of mutuality and for want of consideration.

Without stopping at present to consider Ferguson's right under the contract between Olmstead and the defendants standing alone, let us consider the relation of these contracts to each other, and the rights of the parties under them jointly.   The agreement first mentioned embraces the sale of logs by Olmstead to the defendants and their promise to assume and pay the note for $1000, then held by Ferguson, with interest, on the 1st of December, 1858. The second agreement is, " Whereas, S. B. Olmstead has this day, March 18, 1858, sold and entered into a contract," &c., " the said Stanchfield & Brown and John Dudley have agreed to assume and pay a certain note," &c., " *and we have agreed to pay* the said note *to Alexander Ferguson*," &c.   Here is clearly a promise to Ferguson to pay him the note.   Both these instruments appear to have been executed· on the same day and at the same place. Ferguson was present at and witnessed the execution of the first instrument; in it the sale by Olmstead is in the form of a recital, in the past tense.   The second agreement recites the sale in the same way, and refers to the agreements between Olmstead and the defendants and between the defendants and Ferguson in the

same manner, the past tense being used in each instance. We think, therefore, the conclusion is evident that these agreements were concurrent in point of time, and parts of the same transaction. Nor do we find any difficulty in the fact of a change to the present tense in the concluding clause of the agreement with Ferguson, for the same change of expression is found in the other instrument. We are, therefore, of opinion that the whole matter was embraced in a single transaction, consummated at the same time between the defendants, Olmstead and Ferguson, although evidenced by two separate instruments, and that the sale by Olmstead was the consideration of both agreements. And such seems to have been the conclusion of the Court, differently constituted, when the case was under consideration here on a former occasion. 8 *Minn.*, 518.

In this view of the case there is a privity of contract established between Ferguson and the defendants, founded upon the sale of the logs from Olmstead to the defendants. The case at bar, therefore, presents the question whether a person who is a party to a contract, but a stranger to the consideration, can maintain an action thereon.

"As between the plaintiff and defendant," says Story, "there must be a privity of contract, and if the plaintiff be a mere stranger to the consideration, and no promise be made by the defendant to him founded in privity upon it, the action is not maintainable by him, although a promise have been made by the defendant to pay the plaintiff. If, however, there be a privity between the parties, either party indifferently may bring the action. Indeed a privity of contract will always be implied when the promise or agreement is made in the presence of the third person with his consent." *Story on Contr.*, sec. 450.

The only case contravening the right of action in a case like the present, which we have met with, is that of *Edmundson vs. Penny*, 1 *Barr*, 334, in which the Court held that the plaintiff must unite in his person both consideration and promise, and that whenever they are separate the action must be sustained, if sustained at all, by drawing the one to the other, and that the consideration drew

to it the promise.   Therefore, when a written promise was given
to one man in consideration of services rendered by another, the
right of action was vested in the latter, not in the former.   But it
is remarked in *Notes to American Leading Cases*, that it may be
questioned whether, apart from the decision of *Edmundson vs.
Penny*, any authority can be found on this side of the Atlantic in
support of the naked proposition that the consideration must ne-
cessarily have moved from the party who brings the action; 2
*Am. L. C. (notes)* 124; and the decision in that case is directly in
conflict with a subsequent decision in the same Court, in which
the doctrine is broadly laid down that one for whose benefit and
use a promise is made, if upon sufficient consideration, may main-
tain an action upon it.   *Beers vs. Robinson*, 9 *Barr*, 229; citing
2 *Watts*, 104; 17 *Mass.*, 400; 4 *Watts*, 134.   This is going fur-
ther than we are called upon to go in this case.   But the decision
is sustained by an unbroken chain of authorities in New York
and Massachusetts, and perhaps by the weight of authority in our
country; although we think the Courts latterly incline to limit the
rule when in their power.   It is further to be remarked, touching
the case of *Edmundson vs. Penny*, that the person rendering the
services which formed the sole consideration for the note in that
instance, was not a party to the contract, and in no way did his
assent to it appear; and the Court manifestly treat the contract as
one made for his benefit, and remark, that though the plaintiff is
the representative of the beneficiary to receive the promise, he is not
necessarily his representative to enforce it.   Without, therefore,
determining whether, in the absence of a privity of contract, a person
who is a stranger to the consideration, but for whose benefit a prom-
ise is made, can maintain an action thereon, we are of opinion that
where a privity of contract exists, a person for whose benefit a
promise is made, with the assent of the party from whom the con-
sideration moves, may maintain an action for a breach of the
promise.   Van Eman, therefore, as the assignee of Ferguson, had
a right of action.   This also disposes of all the objections to the
admissibility of the contracts, and the assignments of them by
Ferguson to Van Eman, the plaintiff.

This brings us to the question of the ownership of the note. The note was a negotiable instrument payable to the order of J. & A. J. Chapman, and was not endorsed by them. The answer of the defendant Dudley expressly avers the ownership of the note in Ferguson at the time of the execution of the agreements refer-red to, but Stanchfield & Brown in their separate answer take issue upon the transfer of the note from the payees to Ferguson and from Ferguson to Van Eman the Plaintiff. The only evidence of Ferguson's ownership *dehors* the agreements, is that of Ferguson himself; he says, "I have seen the note before; I held it on the 18th of March, 1858, and then held no other note of Olmstead's." This was the only evidence on this point before the note was receiv-ed in evidence; subsequently the same witness testifies: "I received the note of Jerry Chapman, one of the payees of the note." On cross-examination he says, "at the time I received the note from Jerry Chapman I gave him a writing stating how it was received." The question was then put by defendants' counsel, "why was not the note endorsed when it was delivered to you?" which was ob-jected to by the plaintiff, and the objection sustained; to which the defendants excepted. And the Court, in charging the jury, charged them distinctly that the possession of the note was *prima facie* evidence of ownership, which was excepted to by defend-ants. It may be doubted whether there is anything in the testi-mony of Ferguson which would sustain a verdict for the plaintiff. If, therefore, the Court, in the charge upon this point, was in error it was manifestly injurious to the defendants. That a party may acquire title to a negotiable note, and maintain an action on it in the absence of indorsement, is a question settled by this Court, in which we concur; but it does not follow from this that mere pos-session, by a third party, of a negotiable note payable to order, unendorsed, is *prima facie* evidence of ownership; nor do we un-derstand the case of *Pease, Chalfant & Co. vs. Rush, Pratt and others*, 8 *Minn.*, to go that length. The question in that case arose upon demurrer to the complaint. The complaint alleged that a certain firm were the payees of a certain promissory note; that subsequently to the making of the note a change in the firm

of the payees took place by the withdrawal of two members of the firm, and the sale of their interest to a stranger, the business being conducted by the new partnership under the same firm name. The Court held, upon this state of facts, that the title to the note passed to the new firm, although the note was not endorsed by the old firm. This was a question of pleading, not of evidence. The facts, which were admitted by the demurrer, showed a sale and transfer of the note by the old firm to the new firm, and if mere possession was *prima facie* evidence of ownership, it would have been entirely unnecessary to aver in the complaint the facts showing a change of ownership.

Where a negotiable note payable *to order* is transferred without endorsement, the holder takes it as a mere chose in action, and while he may maintain an action upon it in his own name he must prove the transfer to himself, and mere possession is not *prima facie* evidence of the fact. *Story on Prom. Notes, sec.* 381, 383; 3 *Wend.*, 69.

The charge of the Court, therefore, upon this point was erroneous.

The defendants offered in evidence, in support of the allegation of fraud and failure of consideration a bill of sale dated March 8, 1858, by Olmstead to John L. Young, of which the following is a copy: "I S. B. Olmstead of Fort Ripley in the county of Crow Wing Territory of Minnesota for and in consideration of one dollar to me in hand paid and divers other good and sufficient considerations me moving and of the indebtedness of said Olmstead to Isaac Crowe and John L. Young of the city of St. Anthony, I do hereby sell assign transfer and set over and convey to said Young all the logs belonging to and owned by me in the Mississippi river and along the shores thereof, and also in booms above the Falls of St. Anthony of the following marks, viz: [here follow the several marks,] containing one million feet more or less except the logs due I. F. Woodman of Minneapolis out of above. To have and to hold the same forever. Witness my hand and seal this 8th day of March, 1858.        S. B. OLMSTEAD, [SEAL.]

In presence of C. Draper, Stephen Emerson."

This was objected to by the plaintiff as not purporting to convey the same logs mentioned in the complaint, and that it appears to have been altered as·to punctuation. After the introduction of testimony as to the apparent alteration, the Court held that there was no objection to the paper, so far as any change or alteration was concerned; but that under the decision of the Supreme Court, the instrument only covered logs above the Falls of St. Anthony, and rejected the evidence, to which the defendants excepted.

The defendants then called as a witness John L. Young, who testified: "I bought logs of S. B. Olmstead, in March, 1858. The sale was in writing; it was under that instrument, [the bill of sale above set forth.]" The defendants then offered to show by the witness that in the spring of 1858, before March 18, the witness bought all the logs owned by Olmstead, including the logs which came into the possession of the defendants, being the same purchase mentioned by the witness, which was objected to as incompetent and excluded by the Court; to which the defendants excepted.

The defendants also offered to prove by the witness, that at and after the execution of the agreement, (above set forth,) on the 8th of March, the Vendor, Olmstead, personally pointed out and delivered to the witness, logs above and also below the Falls of St. Anthony, in the Mississippi river, and along its shores, of the marks specified in said agreement, and as being the logs conveyed and intended to be conveyed by said agreement, which was objected to as immaterial and incompetent, and excluded by the Court; to which the defendants excepted. The defendants then offered to show by the witness and others, that Olmstead, at the date of said agreement, in fact sold to Young all logs of the marks named in said agreement, which were in the Mississippi River, from its source to its mouth; that such was the agreement in fact between the parties, and that they all have always acted upon the supposition that the instrument included the whole of such logs, and that if said instrument does not by its terms convey the logs below, as well as those above the Falls of St. Anthony, the failure was through

the mistake of the scrivener who wrote the same; which was objected to as incompetent, and excluded by the Court: to which the defendants excepted.

This instrument has already been the subject of consideration in this Court; and it has been held that its construction was matter of law for the Court; that there was nothing in the least affecting its meaning which could properly be left to the jury, and the Court has construed it to embrace only logs above the Falls of St. Anthony. *Van Eman vs. Stanchfield et al.*, 8 *Min.* 518. It is true that at that time the want of punctuation in the instrument was adverted to, and that now there appears to be a comma after the words " shores thereof," which did not then appear in the copy of the instrument before the Court. But this is the only difference in the instrument, as then presented to the Court and as it now exists. We are unable to see that this materially affects the construction of the instrument. If in addition to this there was a comma after " St. Anthony," or after the word " booms," the punctuation would materially change the instrument. In the former case the construction claimed by the defendants would be clear, and in the latter the plaintiff's construction would obtain. But as it is, we can derive no assistance from the punctuation of the instrument, and the reasoning of the Court in the former case applies with equal force here. The comma appearing as it does in this instrument may increase the difficulty in the mind of the Court of arriving at the true intention of the parties, but if the difficulty can be solved it creates no ambiguity in the legal acceptation of that term. 1 *Greenl. Ev.*, sec. 229. And if an ambiguity does exist, it must arise upon the face of the instrument. For until the doubt as to the construction is removed there is no certain description of anything conveyed by the instrument, and when the doubt is removed there is no difficulty in the application of the instrument to the subject matter of the sale. The ambiguity therefore, if one exists, is a *patent ambiguity*, and parol evidence is not admissible to explain such ambiguity. But the rule that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument, is applied only in suits between the

parties to the instrument and their privies. 1 *Greenl. Ev., sec.* 279; 2 *Stark. Ev.,* (7 *Am. Ed.*) *part* 1, *p.* 790-793; 2 *Par. on Con. p.* 68-9; *Overseers of the Poor of New Berlin vs. The Overseers of the Poor of Norwich,* 10 *Johns.,* 229; *Krider vs. Lafferty,* 1 *Whart.,* 303; *Strader vs. Lambeth, &c.,* 7 *B. Monroe,* (*Ky.*)589; *Chitty on Contr., p.* 99, *note* 1, *citing Stewart vs. State,* 2 *Harr. & Gill,* 114.

The instrument offered in evidence is between Olmstead and John L. Young. The defendants are neither parties nor privies to the instrument, and Van Eman is beyond doubt an entire stranger to it. Under such circumstances we think it is competent for the defendants to show by extrinsic evidence what the agreement between the parties to the instrument offered really was. There was therefore error in excluding the testimony of the defendants offered for this purpose.

It was evidently an error in the jury to allow interest on the note at one per cent. per month from the date of the note to its maturity, amounting to fifty dollars, for by the terms of the note it drew no interest till maturity. This however would not require a new trial, unless the plaintiff should refuse to remit the excess.

For the errors specified, however, the verdict must be set aside and a new trial granted. The order denying a new trial is therefore reversed.