## IRONS v. KENTNER.

1. **Bailment:** STORAGE OF GRAIN: WAREHOUSEMAN. Where grain was delivered to a warehouseman and stored by him in a separate bin, and a receipt returned to the owner which stated that the grain was "bought at owner's risk as to fire," no price being stipulated in the receipt, and it appeared to be the local custom that grain was received in this manner by warehousemen, and afterward purchased or returned, and it further appeared that the warehouseman in this instance offered to purchase the wheat while it was in store, but the owner refused to sell, *held*, that the warehouseman was not liable for the subsequent destruction of the grain by fire.

*Appeal from Tama Circuit Court.*

SATURDAY, APRIL 26.

ON the 24th day of August, 1872, the plaintiff and one T. K. Armstrong were the joint owners of one hundred and forty-nine bushels of wheat. On that day they delivered said wheat to the defendant, who was a dealer in grain, and used and operated a grain elevator at Tama City.

Upon receiving said wheat the defendant delivered to Armstrong and the plaintiff the following ticket or memorandum:

"TAMA CITY, August 24, 1872.

"Bought of T. K. Armstrong, for C. H. Kentner, to be delivered at his elevator, according to sample, wheat No. 3, at owner's risk as to fire."

On the back of this instrument there was indorsed the following figures: "40.20, 40.30, 43.20, 25.00, 148.70."

The said wheat was deposited in the elevator of the defendant, and within one month thereafter the said elevator with its contents was destroyed by fire. . Afterward Armstrong assigned his interest in said written memorandum or ticket to the plaintiff.

This action was brought to recover the value of said wheat. It is averred in the petition that it was the universal custom

of all wheat merchants at said place, receiving wheat for parties in their respective elevators or warehouses, to mix all wheat of like grade in one common bin, to keep a sample of the same, and ship off the grain so left with them, and sell it; and, when the parties who had left wheat with them as aforesaid wanted to sell, buy it, if they could, and if they did not, to return to said parties wheat of the same grade and quality as that they had left with them; and, if the wheat should not be called for until it had been in their said elevators more than one month, then said wheat merchants were to charge one cent per bushel per month for the time said wheat should have been in said elevator

It is further averred that said Armstrong and the plaintiff well knew of said custom and usage when they delivered said wheat, and the same was delivered in accordance with said custom.

The defendant by his answer avers that the said transaction was not a sale of wheat to him by plaintiff and Armstrong, but was a mere storage of the grain, and that the wheat mentioned in the petition was consumed by the fire which destroyed the elevator and its contents, and that when destroyed, the said wheat was the property of said Armstrong.

There was a trial by the court. Upon the trial it was admitted "that the elevator was burned without any fault of the defendant. Also the delivery of the wheat by Armstrong and plaintiff, and their joint interest and their assignment to the plaintiff, and the number of bushels of wheat as set out in the petition, and that the wheat was put in the elevator under the custom of the country set up in the petition, and if it remained there over thirty days storage was to be charged," were admitted as facts established in the case.

There was a judgment for the plaintiff. Defendant appeals.

*A. W. Guernsey* and *O. H. Mills,* for appellant.

*W. H. Stivers,* for appellee.

ROTHROCK, J.—The question we are required to determine is whether the transaction between the contesting parties constituted a sale of the wheat or a mere bailment. The evidence shows that the wheat in question was not deposited in a common bin with other wheat, but that it was placed in a separate bin, where it remained unmixed with other grain until it was destroyed by fire. It further appears that no demand was made for the wheat by the plaintiff or Armstrong previous to the fire, but that the defendant, by his agent, offered the plaintiff ninety-five cents per bushel on the Saturday before the fire.

1. BAILMENT: storage of grain: warehouseman.

In *Johnston v. Browne*, 37 Iowa, 200, the ticket or memorandum given by Browne on receiving the grain in the elevator was in these words. "Bought of H. T. Pickett, for W. P. Browne, to be delivered at Browne's elevator, if all like sample ———— of wheat, at $————, in store, ———— buyer, ———— bushels ———— lbs."

It was shown in that case, by extrinsic evidence, that the understanding of the parties was that Browne, the proprietor of the elevator, was to ship and sell the grain on his own account, and when the depositor desired to sell Browne was to pay the highest price for the grain, or return a like quantity and quality.

That transaction was held to be a sale and not a mere storage or bailment of the grain.

In *Nelson v. Brown, Doty & Co.*, 44 Iowa, 455, the ticket or memorandum delivered to the depositor of the grain was in these words: "Received of C. C. Cowell, for Thompson, in store, for account and risk of C. C. Cowell, one hundred and eighty-three bushels No. 3 wheat. Loss by fire, heating and the elements at the owner's risk. Wheat of equal test and value, but not the identical wheat, may be returned."

It was held in that case that so long as the wheat remained in the elevator, though thrown in a common bin with wheat of like quality, the transaction was a mere bailment. It is there said: "But the warehouseman is not under obligation to

retain the wheat of the depositor in his warehouse. He may, without breach of contract, and without being guilty of conversion, ship the wheat away on his own account. When he avails himself of this privilege the character of the transaction and the relation of the parties change."

In the case at bar the ticket or memorandum expresses no completed contract upon its face. In this respect it is unlike the contract in *Marks v. The Cass Co. Mill & Elevator Co.,* 43 Iowa, 146, where it was held the contract could not be explained by parol evidence because it was complete in its terms.

In this case no action can be maintained upon the instrument without the aid of extrinsic evidence. Parol evidence is necessary to fix the price agreed to be paid if it should be held to be a contract of sale, and whether a sale or mere bailment parol evidence is necessary to explain the figures indorsed on the instrument.

It was admitted the grain was delivered in pursuance of the alleged custom or usage, and it was shown that it was in the elevator in a separate bin when it was burned, and that the defendant offered to purchase it on the Saturday before the fire. These facts, when taken in connection with the ticket, show clearly that the transaction was not a sale, but a bailment. It is true that the word "bought" in the ticket, unexplained, would import a sale, but when taken in connection with the expression "at owner's risk of fire," and in the light of the parol evidence, it clearly appears that a sale was not contemplated by the parties. "At owner's risk of fire" evidently means that so long as the wheat should remain in the elevator the plaintiff should bear that risk. If it was a sale it is not at all probable that any such words would have been used. In such case the warehouseman would have assumed the risk without any stipulation to that effect.

We think the case is clearly within the rule of *Nelson v. Brown, Doty & Co., supra,* and that, as the identical wheat

remained in the elevator and was consumed with it, the defendant is not liable.

REVERSED.