KAUFMAN & RUNGE v. B. ALEXANDER & BRO.

*(Case No. 4192.)*

1. BANKRUPTCY — CONTRACT — FIDUCIARY RELATIONS.— B., a Galveston
merchant, agreed in 1877, in writing, with C., a merchant in the interior,
that B. would furnish C. the grip cotton tie on consignment, C. agreeing
"to handle the cotton tie as follows, viz.: paying $2.50 per bundle,
with invoice rendered (after first sixty days) every thirty days for
number of bundles of cotton ties sold, less ten per cent.," C. to give B.
his "entire shipments of cotton and influence," and to bear "all ex-
penses on consignment, such as fire insurance, etc." C., after being
adjudged a bankrupt, made a composition with his creditors under the
act of June 22, 1874, B. not being included among those who accepted it.
Afterwards, B. brought suit against C. on an account embracing charges
antedating the bankruptcy, for ties and other merchandise furnished him,
in which C. was credited with net proceeds of different lots of cotton con-
signed by him. The default claimed was for failing to pay over at end
of every thirty days. *Held —*

1. C. was not required, under the contract, to keep separate the pro-
ceeds of each sale, to be delivered to B. as his money.

2. C. could sell on any terms he chose, being required only to report
and pay over every thirty days, at the rate stipulated by contract.

3. Plaintiff's demand was for a *debt* due under the contract, and not
for a trust fund.

4. Under the contract, the proceeds of sales did not become the
property of B. so as to make it wrongful in C. to mingle them with his
own money, and his failure to pay over did not exclude him from the
benefits of the bankrupt law. His demand was not of such a fiduciary
character as precluded its discharge by the bankrupt proceedings and
composition.

APPEAL from McLennan. Tried below before the Hon. L.
C. Alexander.

Kaufman & Runge brought suit on the 8th of August,
1878, in debt on an open account against B. Alexander & Bro.,
to recover the sum of $2,693.76, alleged to be due them from
defendants as agents of plaintiffs, for bagging, twine and grip
cotton ties, shipped and consigned to defendants, to be by
them sold on commission for plaintiffs, pursuant to a con-
tract whereby plaintiffs had obligated themselves to ship
such goods for sale upon commission, upon sixty days, in such

amounts and quantities, each, of said articles, as they, defendants, might need for their entire trade in McLennan county, for which and Bosque county defendants were, by contract, made the special and exclusive agents for plaintiffs for grip ties.

Plaintiffs alleged that under an agreement which was made July 27, 1877, defendants undertook and agreed to become agents for them, for sale, upon commission, of the above mentioned articles of merchandise, and handle and sell same for plaintiff upon commission, and at the end of the first sixty days, and every thirty days thereafter, report, account to and pay over to plaintiffs the proceeds of all sales made by them; that they, under that contract, consigned and delivered to defendants of the above described kind of goods to the amount of $4,985.25, exclusive of interest; that defendants failed to render account of sales of the merchandise so consigned to them on commission, and failed to pay over proceeds of same, excepting the sum of $2,295.49, credited to defendants, or to return same in kind, thus breaking their contract, and being and remaining in the debt of plaintiffs, for and on account of the goods, after allowing all credits, in the sum of $2,693.76, balance sued for, for which they prayed judgment.

The appellees filed, November 8, 1878:

1. A general denial.

2. A special answer: That they never made but one contract in writing with plaintiffs, which they attach to the answer as a part of same; that under that contract they admit they received from plaintiffs the grip cotton ties, as charged in plaintiffs' account sued on; that it was agreed between plaintiffs and defendants that defendants should ship all the cotton they, defendants, should buy and ship to Galveston during the cotton season, 1877–78, to the plaintiffs on account of ties sold under the contract; that defendants did ship twenty-two bales of cotton to plaintiffs, to be sold on account of the sales of grip ties; that the same were received and sold by plaintiffs, bringing $934.70, as shown by plaintiffs' account sued on; that plaintiffs agreed to deduct from account for ties, which

amounted to $1,674.70, the sum of $66.75, which also appears from plaintiffs' account sued on; and after making deduction and the sales of said cotton, defendants admit they owe plaintiffs under said contract the sum of $505.15.

Defendants, in their answer, further alleged that plaintiffs sold and delivered to them the bagging and twine as represented in plaintiffs' petition and the account sued on, showing the price at which the same was sold, which is correct, and for which defendants became indebted to plaintiffs, as set out in petition; that they did not owe to the plaintiffs any sum whatever on account of ties and bagging and twine, but that the claim had been discharged as follows: that in the month of February, 1878, J. H. Reed and others, creditors of the defendants, filed their petition in the United States district court for the western district of Texas, at Austin, praying the court to adjudge them bankrupts under the bankrupt law then in force; that afterwards, according to the provisions of the bankrupt law, the requisite number of creditors accepted a proposition from defendants for composition; that the resolution of defendants' creditors, accepting the composition, was filed in that court; that the proposition so accepted on composition proceedings in bankruptcy by defendants' creditors was, that defendants pay to their creditors thirty-two and one-half cents on each dollar due, to wit: ten cents within ten days of record of resolution to accept composition, and twenty-two and one-half cents on the dollar in two installments in four and eight months, for which defendants would execute notes indorsed by A. Harris & Bro., Houston, Texas; that they, defendants in bankruptcy proceedings, did file names of creditors and amount due each, including names of plaintiffs and amount due them; that after such composition proceedings were had, plaintiffs accepted from defendants the ten cents cash payment proposed in composition on the amount due them, and notes for the balance as specified in the proposition and resolution for composition, of twenty-two and one-half cents, indorsed by Harris & Bro., which notes defendants

averred had been paid plaintiffs by them, and that the money was paid and notes given, and the notes were received and accepted in satisfaction of the plaintiffs' debt sued on, under bankruptcy proceedings, and therefore that defendants had no cause of action.

Defendants, by a further special plea, alleged that if the contract between plaintiffs and defendants, in regard to grip ties, was a trust contract, and not discharged by the bankrupt proceedings, then defendants claim credit for $1,001.48, being amount of cotton shipped to plaintiffs, and amount of allowance on grip ties, as made in plaintiffs' account sued on, and the further sum of $544.05, being thirty-two and one-half per cent. on $1,674, the amount charged for the ties, which defendants paid to plaintiffs as represented in special answer, on the whole account claimed by plaintiffs, and which plaintiffs were not entitled to receive under composition proceedings, if the account for said ties was not liable to be settled thereby.

The court, the cause being submitted without a jury, rendered judgment for defendants.

The following is a copy of the contract:

"Messrs. B. Alexander & Bro. agree to handle the grip cotton tie as follows, viz.:   Paying $2.50 per bundle, with invoice rendered (after first sixty days) every thirty days for number of bundles ties sold (less ten per cent.).   Will give us their entire shipment of cotton and influence.   Messrs. B. Alexander & Bro. further agree to bear all expenses on consignment, such as fire insurance, storage, freights, drayage, etc., accruing on consignments of ties.   We, Messrs. Kaufman & Runge, of Galveston, state agents for the grip cotton tie, agree to furnish Messrs. B. Alexander & Bro. the grip cotton tie on consignment, less ten per cent. of invoice, they agreeing as stated above to report (after first sixty days) every thirty days succeeding the number of bundles of ties sold. Their district to embrace McLennan and Bosque counties.

(Signed)                    " B. ALEXANDER & BRO.
                            " KAUFMAN & RUNGE,
                              " Per L. FARLEY."

The evidence established the allegations of the petition in regard to the bankrupt proceedings and composition. It will be seen that the items of bagging and twine embraced in the amount sued on were not provided for by contract.

*John L. Dyer* for appellants.— The judgment of the court is contrary to the law and the evidence. First, contrary to the law, because the plaintiffs' demand against defendants was one of agency, trust and of a fiduciary character, and was not therefore discharged by the bankruptcy and discharge in bankruptcy of defendants. Sec. 33, Bankrupt Act, passed 2d March, 1867, standing as sec. 5117, U. S. Rev. Stat., p. 986; see Act Congress passed June 22, 1874; Banning *v.* Bleakley, 27 La., 257 (21 Am. Rep., p. 554); Lemcke *v.* Booth, 47 Mo., 385 (4 Am. Rep., p. 326); Treadwell *v.* Carter, 46 Cal., 547; Leggett *v.* Barton, 11 Vroom (N. J.), p. 83.

*Walton, Green & Hill* for appellees.— The demand of the plaintiffs was not of fiduciary character, and was discharged by the proceedings in bankruptcy and composition. Session Acts, 1874, 22d June, sec. 17, p. 183; R. S., secs. 5115, 5117, 5119; Chapman *v.* Forsyth, 2 How., 202; Cronan *v.* Cotting, 104 Mass., 205 (6 Am. Rep., 232); Woolsey *v.* Cade, 54 Ala., 378 (25 Am. Rep., 711); Graves *v.* Clinton, 8 B. R., 312; Owsley *v.* Cabias, 15 B. R., 489; Kisme *v.* Graf, U. S. C. C. Penn., March, 1878; Woodward *v.* Towne, Sup. Ct. Mass., 1879 (5 Reporter, 489); Neal *v.* Clarke, 5 Otto, 704–708 (8 Reporter, 173); Hennequin *v.* Cleves, Ct. Appeals N. Y., May, 1879, by Church, Ch. J. (8 Reporter, 210).

GOULD, ASSOCIATE JUSTICE.— Appellants assert that their demand against defendants is for a debt created by them " whilst acting in a fiduciary character," and is therefore not discharged by proceedings in bankruptcy. The evidence shows a written agreement in July, 1877, between B. Alexander & Bro., merchants in McLennan county, and Kaufman & Runge,

carrying on a general mercantile and commission business in Galveston, the purport of which was, that Kaufman & Runge were to furnish Alexander & Bro. the grip cotton tie on consignment, they agreeing "to handle the grip cotton tie as follows, viz.: Paying $2.50 per bundle, with invoice rendered (after first sixty days) every thirty days for number of bundles ties sold (less ten per cent.)." They to give K. & R. "their entire shipments of cotton, and influence," and to bear "all expenses on consignment, such as fire insurance, etc."

The account sued on embraces charges for grip ties, bagging and twine, in the fall of 1877, and is credited with net proceeds of different lots of cotton consigned during that season to K. & R. by Alexander & Bro. A subsequent credit is admitted, growing out of payments under the proceedings in bankruptcy, on a composition by B. Alexander & Bro. with their creditors, plaintiffs not having signed said composition proceedings. Plaintiffs say their demand is for goods delivered to defendants to be sold on commission, and is based on the failure of defendants to account for said goods in kind, or to pay for them.

There is nothing in the evidence from which it can be inferred that Alexander & Bro. appropriated any of the articles consigned to them otherwise than by sale, as contemplated by their agreement. Their default is in failing to pay for ties sold at the end of every thirty days. From the terms of the written agreement, we think it clear that it was not contemplated by the parties that Alexander & Bro. should keep separate the proceeds of each sale to be handed over as the money of Kaufman & Runge. Indeed, it would seem that they were not prohibited from selling on time, or on such terms as they saw fit. For ties sold, Alexander & Bro. were to make report and payment at a stipulated price every thirty days. Kaufman & Runge looked to them for pay, not for the mere transmission of what they might have actually received for sales. In fact, the only payments made during the season were in shipments of cotton.

Our conclusion is that the demand of plaintiffs is for a debt due them by their agents, growing out of and contemplated by the contract between them, and not, so far as the evidence shows, involving any bad faith or breach of trust on the part of the agents in appropriating as their own that which, by reason of their fiduciary relation, they were bound to hold in trust for their principals. Whilst there is quite a conflict of decisions as to the proper construction of this clause of the bankrupt act, and especially as to its application to a demand by a consignor against a factor, it is not believed that any of the cases would require the exclusion from the benefits of the bankrupt law of all debts growing out of an agency to sell, or of such a debt as we understand this to be.

An important element in this case, and not in some of the cases as to factors and commission merchants, is, that under the contract the proceeds of sales did not become the property of the principal, so as to make it wrongful in defendants to use those proceeds or mingle them with their own money. Bonning *v.* Bleakey, 27 La. An., 257.

This court has held "a debt growing out of the conversion by an attorney of his client's money or property in his hands as such," to be a debt created whilst acting in a fiduciary character. Flanagan *v.* Pearson, 42 Tex., 1. Such a breach of duty involves moral delinquency by one held to be acting in a fiduciary capacity within the spirit of the decisions construing the bankrupt law of 1841. We are inclined to regard the better rule as laid down in those decisions which accept the clause in question as substantially the same as in the law of 1841, and thus adopt and retain the benefit of the "fixed judicial construction" given to the expression "fiduciary capacity," under the act of 1841. Woolsey *v.* Cade, 54 Mo., 378; Cronan *v.* Cotting, 104 Mass., 245; Hennequin *v.* Cleves, N. Y. Court of Appeals, 1879 (8 Rep., 210); Kisme *v.* Graf & Co., U. S. C. C., West. Dist. Pa., 1878 (5 Rep., 489); Chapman *v.* Forsyth, 2 How., 202; Neal *v.* Clark, 95 U. S., 704.

In the last cited case the supreme court of the United States,

whose decision "would be authoritative on questions of federal cognizance," quote largely from Chapman *v.* Forsyth, the quotation winding up with the proposition: "A factor is not, therefore, within the act."

But, according to our view of the present case, it is not necessary for us to go to that extent. "The demand of the plaintiffs, as developed in the record, was not of a fiduciary character, and was discharged by the proceedings in bankruptcy and composition."

The judgment is affirmed.

AFFIRMED.

[Opinion delivered June 4, 1880.]