(Opinion published 51 N. W. Rep. 656.)

---

NATIONAL CAR & LOCOMOTIVE BUILDER *vs.* CYCLONE STEAM SNOW PLOW CO.

Argued Jan. 21, 1892.   Decided March 21, 1892.

**Parol Evidence to Vary Contract in Action by Third Person.**—A third person, not in privity with the parties to a contract, is not concluded by the writing by which they have evidenced their agreement. He may show that the writing was not intended to express the real agreement.

**Contract in Form a Lease, Held a Sale.**—A contract in the terms of bailment of personal property—a snow plow—for the period of 99 years, there being also oral evidence in favor of a third person to the effect that

the terms of a bailment were thus employed to disguise what was intended as a sale, *held* to justify the finding that the transaction was a sale.

**Debt Payable "Out of Proceeds"—When Due.**—One who had contracted to pay a specified sum of money "out of the proceeds" of the first article sold of a specified kind (a snow plow) becomes at once absolutely liable to make such payment, if in making such sale he includes also other property, a gross and unapportioned price being received for the whole.

Appeal by plaintiff, the National Car and Locomotive Builder, from an order of the District Court of Hennepin County, *Smith*, J., made September 24, 1891, denying its motion for a new trial.

The plaintiff is a corporation engaged in the business of publishing a newspaper at Minneapolis, Minn. The defendant is a corporation and owned certain rights secured by letters patent for the construction and use of a snow plow invented by Edward P. Caldwell, called "Cyclone Steam Snow Plow." These corporations entered into a contract as follows:

447 ROOKERY BUILDING, CHICAGO, May 16th, 1890.

The National Car and Locomotive Builder agrees to publish the advertisement of Cyclone Steam Snow Plow Company in a space of one full page, thirteen consecutive months, beginning June, 1889, for which the undersigned agrees to pay $900, it being understood that the National Car and Locomotive Builder is not responsible for any statements or conditions not expressed in this order. The above consideration for advertisement to be paid out of the proceeds of the sale of the first plow.

CYCLONE STEAM SNOW PLOW COMPANY.
By E. P. CALDWELL, Gen'l Mngr.

Plaintiff performed on its part. The defendant on March 4, 1890, made a contract with the Southern Pacific Railroad Company by which, for $16,000, it licensed and empowered that railroad company to make for its own use on its railroad, the snow plows for the full term of the patents, and let to it snow plow No. 1 for ninety-nine years; the railroad company agreeing to rearrange the

machinery on the snow plow as soon as practicable, and make certain alterations and improvements. The terms of the letting in that contract were as follows:

"And for the consideration aforesaid, the said The Cyclone Steam Snow Plow Company hereby lets unto the said Southern Pacific Company for ninety-nine years from the date hereof the snow plow known as Cyclone Steam Snow Plow No. 1, now in service on the lines of railroad of said Southern Pacific Company. Provided, always that said Southern Pacific Company shall within reasonable time from the date hereof rearrange the machinery thereon or make or cause to be made therein such alterations and improvements as in the judgment of the officers of the said Southern Pacific Company may be required to perfect said plow for the work for which it was designed, and that said Southern Pacific Company will within a reasonable time furnish unto said The Cyclone Steam Snow Plow Company copies of the plans, designs and specifications of any rearrangements, alterations and improvements that said Southern Pacific Company may adopt."

Plaintiff claimed this was a sale of snow plow No. 1 within the terms of the advertising contract, and that the pretense of a lease for ninety-nine years was a device to evade and postpone payment of the advertising bills. Defendant denied that this was a sale, and claimed that plaintiff's bill for advertising was not yet due, because plaintiff had not shown that defendant had received anything for the plow. Defendant claimed that the $16,000 it received was for the license to use its patents and not for plow No. 1, and alleged that this was the first and only plow it had made and that it was constructed for experimental purposes, and was found to be grossly defective and was practically valueless and unsalable.

The action was tried July 3, 1891. The trial court found that defendant had on March 4, 1890, sold and delivered its first snow plow; that the plow sold was the only plow ever manufactured by defendant or under its patents, but that plaintiff had failed to show what portion of the $16,000 was paid for the plow and what portion for the license to build and use plows; that plaintiff had failed to show that the money received or any substantial part of it was pro-

ceeds of the sale of the plow, and ordered judgment for defendant. Plaintiff moved for a new trial, and being denied appealed to this court.

*Walter C. Tiffany* and *Frank H. Morrill*, for appellant.

The transaction is not changed by the agreement assuming the form of a lease. In determining the real character of a contract, courts will always look to its purpose rather than to the name given to it by the parties. *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664; *Heryford* v. *Davis*, 102 U. S. 235.

No rent or price for hire is mentioned. The absolute property in the plow is transferred. There is no provision for any return of the plow to defendant. The Southern Pacific Company has the right, under the agreement, to make any alterations in the plow which it may desire, to tear it to pieces, and put in new parts, to completely reconstruct the plow of new materials, and on an entirely new plan and principle, if it sees fit. To lease the plow for ninety-nine years, a period greatly beyond its life, is really a transfer of the absolute property in the plow, and hence a sale. To make a lease of a chattel for a period so greatly in excess of its life, is so unusual and peculiar a circumstance as to at once arouse suspicion as to its object. At the time this agreement was made the various advertising contracts involved in this and other suits, aggregating a considerable liability, were in existence. They provide for payment after the sale or from the proceeds of the sale of the first snow plow. Defendant's intention was clearly to defeat these claims.

Defendant contends that the recitals in the contract, "the above consideration for advertisement to be paid out of the proceeds of the sale of the first plow," and "payable out of the sale of the first plow," restrict plaintiff's recovery to the proceeds of the sale. This we contend is not, in reason, the construction of the contracts contemplated by the parties to them, nor have the courts in passing upon such provisions in similar contracts, given them the construction claimed by respondent. *Langdon* v. *Northfield*, 42 Minn. 464; *Conehan* v. *Crosby*, 15 Minn. 13, (Gil. 1;) *Scott* v. *Ebury*, L. R. 2 C. P. 255; *White* v. *Chaffin*, 32 Ark. 59; *Blen* v. *Bear River, etc., Min. Co.*, 15 Cal. 97.

*Hart & Brewer*, for respondent.

It is clear that what the Southern Pacific Company desired to acquire by its contract was, not the plow in question, but the right to perfect, build, and use other plows embodying the invention covered by the patents. The plow itself was worthless except for experimental purposes and as a working model from which to construct others. After all the satisfactory tests, this plow No. 1 was demonstrated to be a failure for the uses and purposes for which it was designed, so that it was not marketable as a snow plow. A disposition of it for some slight consideration, looking to its possible use for some purpose foreign to that for which it was built, would not fix a liability under this advertising contract. We submit that the "first snow plow" is yet to be built as well as sold.

The consideration for the advertisement was to be paid out of the proceeds of the sale of the first plow. No proceeds were derived from the sale. The plaintiff failed to show that any portion of the $16,000 was paid as consideration for the plow, and also failed to introduce evidence of any kind as a basis for an apportionment of the consideration recited in the contract. *Pray* v. *Rhodes*, 42 Minn. 95.

Where there is a promise to pay out of a particular fund, the promisee is restricted to the fund thus specified, and has no remedy if such fund did not come into the promisor's power, supposing its nonreception is not imputable to the promisor's negligence. *Chambers* v. *Jaynes*, 4 Pa. St. 39; *Snell* v. *Cheney*, 88 Ill. 258.

DICKINSON, J.   Both these parties are corporations. In the year 1889 the defendant obligated itself by contract to pay to the plaintiff certain specified sums of money, amounting to a little more than $1,000, in consideration of the publication of certain advertisements by the plaintiff for the defendant. It was, however, expressed in the contract that such payment should be made "out of the proceeds out of the sale of the first plow," which meant out of the proceeds of the first snow plow that should be sold by the defendant. This action is for the recovery of the amounts thus agreed upon. The defense is that no snow plow was ever *sold*, that no *pro-*

*ceeds* of a sale of a plow were ever received, and hence that by the very terms of the contract the defendant is not liable.

Some nine months after the making of the contract the defendant entered into a contract with the Southern Pacific Railroad Company, which was evidenced by a writing, by the terms of which, for the expressed consideration of $16,000, the receipt of which by the defendant was acknowledged, the latter "licensed and empowered" the railroad company to manufacture, for its own use, the Cyclone Steam Snow Plow, for which the defendant was declared to hold letters patent from the United States. It was further declared that for the same consideration the Cyclone Steam Snow Plow Company "hereby lets unto the said Southern Pacific Company, for ninety-nine years from the date hereof, the snow plow known as 'Cyclone Steam Snow Plow No. 1,' now in service on the lines of railroad of said Southern Pacific Company: provided, always, that said Southern Pacific Company shall, within reasonable time from the date hereof, rearrange the machinery thereon, or make or cause to be made thereon such alterations and improvements as in the judgment of the officers of the said Southern Pacific Company may be required to perfect said plow for the work for which it was designed; and that said Southern Pacific Company will, within a reasonable time, furnish unto said the Cyclone Steam Snow Plow Company copies of the plans, designs, and specifications of any rearrangements, alterations, and improvements that said Southern Pacific Company may adopt."

The snow plow referred to in this instrument was delivered to the railroad company. It was the first and the only snow plow ever manufactured by the defendant or under its patents. The court found this transaction to be a sale. We concur in this conclusion, notwithstanding the employment of the technical language of a lease, which, standing alone, might import a bailment rather than a sale. Neither the technical meaning of terms, nor the name by which the parties may characterize their transactions, are allowed to prevail over the real intention manifest from the whole instrument or agreement. There was oral evidence going to show that the defendant and the railroad company sought to put the contract in the form of

a bailment rather than a sale, merely for the purpose of enabling the defendant to avoid its obligation to the plaintiff, which embraced the sale of a plow as a condition respecting the time of payment. Such evidence was admissible in favor of this plaintiff, who, not being a party to that contract, nor standing in privity with the contracting parties, was not concluded by the terms which they had employed as evidence of their agreement. *Van Eman* v. *Stanchfield*, 10 Minn. 255, (Gil. 197;) *Sanborn* v. *Sturtevant*, 17 Minn. 200, (Gil. 174.) The defendant might show that the parties employed language to conceal, rather than to evidence, the real nature of the transaction.

This oral evidence is supported, and its credibility strengthened, by the inherent improbability of the parties having really intended a bailment of this property *for the period of 99 years*, with the right in the bailee during that time to use, alter, rearrange, or improve the machine according to its own judgment. The absence of any provision for the preservation and return of the property may also be noted. The improbability that the plow—a complex mechanical structure, including an engine and machinery for its own operation—would endure for so long a period seems to be so great that it is not reasonable to suppose that the defendant could have contemplated any benefit from the property, either to itself or its assigns, after the lapse of the 99 years.

It may be added that the term of the so-called "letting" was not qualified by any condition. The railroad company was not required to do anything to the plow as a condition of retaining the property. What it did undertake to do should be regarded as a mere personal agreement, and not a condition.

If this was intended by the parties as being practically a transfer of the property for the consideration expressed, and the form of a bailment or letting was adopted for the purpose above referred to, or for any other purpose, but without intending by such means to secure a return of the property, it should be treated as a sale, for the purposes of this case. It would be a "sale," within the fair meaning of that word as used by these parties in fixing the condition in their contract with respect to the payment, and which is recited at the commencement of this opinion.

While the case shows the payment of $16,000, as specified in the writing above recited, it does not show that any part of this sum was particularly agreed upon as the price or consideration for the snow plow, and it is to be assumed that there was no apportionment; that is, that this sum was the entire consideration for the sale of the snow plow and of the patent rights.    It was probably for this reason that the court below considered that the plaintiff was not entitled to recover.    But in our view it does not prejudice the plaintiff's case that the defendant, in selling the snow plow, included also other property, an entire gross price being received for the whole.    The defendant obligated itself to pay a specified sum for services performed, but it was added that this was to be paid "out of the proceeds of the sale of the first plow."    It was bound by that agreement; bound to thus appropriate the proceeds of the first sale of a plow.    If the defendant disabled itself from performing this contract obligation by making a gross sale, including other property with the plow, for a gross sum, so that it cannot be shown what price was received for the plow alone, the liability to pay the stipulated sum to the plaintiff became at once absolute.    The defendant made the sale, and it cannot escape liability on the plea that it chose to make it in such a manner that no definite price can be said to have been paid for the plow *alone*.    The liability having thus become absolute, it is unnecessary to consider whether, under other circumstances, the liability of the defendant would have been limited in amount to the sum received for the first sale of a plow.

With reference to the fourth assignment of error, it is enough to say that, in excluding the opinion of the witness as to how long such a plow would last if properly constructed, the court intimated that the question should be how long *this* plow would last, which, as is conceded, was *not* properly constructed.    The ruling was right, for the question was based upon an hypothesis contrary to the fact.

Order reversed.

MITCHELL, J., by reason of sickness, did not take part in the hearing or decision.

(Opinion published 51 N. W. Rep. 657.)