### H. W. WILLIAMS ET AL. v. DRUMMOND TOBACCO COMPANY.

Delivered December 4, 1897.

**Sale Not Conditional, When.**

A completed sale, and not a mere agency to sell, is evidenced by a contract by which one party becomes absolutely bound to pay in full for every shipment of property made to him by the other, and has no right to return the property under any circumstances, the other party reserving no right to retake the same, notwithstanding that the contract is denominated an agency and expressly provides that the title of the property is to remain in the shipper until sold by the consignee.

APPEAL from Hunt. Tried below before Hon. HOWARD TEMPLETON.

*Perkins, Gilbert & Perkins,* for appellants.—When a manufacturer delivers his goods to a merchant, to be by him sold in the usual course of business, at his pleasure, to whom he pleases, for cash or on credit, and if on credit is not required to remit the proceeds of sales, or to deliver or account for the notes taken for, or accounts made of, credit sales to the manufacturers, or required to make any reports of sales of the goods nor the quantity remaining on hand at any time, nor report as to whom or when sold, at what prices or upon what terms, but is himself required to pay for such goods so delivered by the manufacturer at a stipulated price, at a specified time, irrespective of whether any of said goods had been sold by him, the transaction is one of bargain and sale, and not a consignment. Kaufman v. Alexander, 53 Texas, 562; Mack v. Tobacco Co., 67 N. W. Rep., 174; Arbuckle Bros. v. Kirkpatrick, 39 S. W. Rep., 3; Ex Parte Flannagans, 2 Hughes C. C. Rep., 264; Harryford v. Davis, 101 U. S., 235; Ex Parte White, L. R., 6 Chan. App., 397, quoted in Benj. on Sales, 4 ed., sec. 598; Brewing Co. v. Anderson, 40 S. W. Rep., 737.

*Craddock & Looney,* for appellee.—The contract between appellee and Schluter & Co. was one of consignment and not of sale, and title to the tobacco remained in appellees until sold by Schluter & Co. Manufacturing Co. v. Peak, 34 S. W. Rep., 102; Welch v. Phelps, 36 S. W. Rep., 71; Webb on Rec. of Title, sec. 249.

FINLEY, CHIEF JUSTICE.—Appellee brought this suit in the District Court of Hunt County, Texas, to recover the title and possession of certain tobacco described in its petition, or for its value. It was alleged that on November 29, 1895, it was the owner and entitled to the possession of said tobacco. That on said date A. H. Schluter & Co. held the same as agents of appellee, in whom it was alleged was the legal and equitable title. That on said date Schluter made a deed of trust by which he conveyed said tobacco to appellants, who took possession thereof and refused to deliver it to appellee. That its aggregate value was $1019.10. The property was seized under writ of sequestration, and replevied by appellants.

Appellants answered, admitting that the property was in the possession of defendants, and alleging that appellants were the owners thereof

and entitled to possession, and that appellee unlawfully caused the same to be seized under writ of sequestration. They also denied that the property was held for sale on commission by A. H. Schluter & Co., but alleged that the property came into Schluter's possession by purchase from appellee. They admitted that Schluter made a chattel mortgage conveying this and other property to them, in trust to secure certain creditors therein named, and attached a copy of said mortgage as an exhibit to said answer. That appellants took possession of said property by virtue of said mortgage, and were proceeding to execute the powers conferred upon them in accordance with its terms, and that appellee wrongfully sequestrated said tobacco. Appellants further alleged, that if Schluter & Co. ever had any contract with appellee for the sale of goods on commission, that said contract was illegal, and in violation of the laws of Texas, and had been rescinded or canceled by appellee long before any, of the goods herein claimed were sold to or received by Schluter. That said goods were sold to Schluter in due course of trade, and were by Schluter transferred to appellants, in trust, to secure the indebtedness therein specified, which was a valid and subsisting indebtedness.

Exhibit "A," made a part of appellant's answer, is a valid chattel mortgage in due form and properly executed by Schluter and accepted by said trustees, and duly filed and registered, and conveyed the property in controversy.

The cause was tried before the court without a jury, who gave judgment for appellee against appellants and the sureties on their replevin bond. To which judgment appellants and their sureties excepted, and have prosecuted this appeal.

There is no statement of facts contained in the record, but the appeal is prosecuted on the findings of the trial court, which are as follows:

*Conclusions of Fact.*—"1. Plaintiff is a corporation incorporated under the laws of the State of Missouri, with its principal office in the city of St. Louis, and was in 1895, and had been many years prior thereto, engaged in the manufacture of tobaccos.

"2. A. H. Schluter & Co. was a firm composed of A. H. Schluter, and was in 1895, and had been for many years prior thereto, a wholesale grocer, doing business in the city of Jefferson, Texas, and did on September 6, 1895, open a branch of his business in Greenville, Texas, for the conduct of a wholesale grocery business, wherein goods were sold only in original packages.

"3. Some time during the year 1894, plaintiff and said A. H. Schluter & Co. entered into the following contract, to wit:

" 'Drummond Tobacco Company. Office and factory, corner Spruce and Fourth Streets, St. Louis, Mo.

" 'A. H. Schluter & Co., Jefferson, Texas:

" '1. We hereby appoint you our agent, to sell our tobaccos at such prices as we may designate by our price cards as issued from time to time, the title to said tobaccos to remain in us until sold by you.

" '2.  For acting as such agent we will pay you a commission, to be determined by us from time to time, on all sales you make for us.  In consideration of this commission, you warrant that every shipment made to you shall be paid for in full.

" '3.  If, within ten days after any shipment, you make cash advances on such shipment, we will fix and pay you an extra commission therefor, the advances to be entirely at the risk of your reimbursing yourself out of the tobacco shipped.

" '4.  You are to insure all tobacco shipped against loss for cash advances made, or on account of your above warranty.

" '5.  We will pay your commission every sixty days, but if you sell our tobaccos at less than prices designated by us, we reserve the right to retain any part or all of such commission as may be unpaid at the time of such sale.  We reserve the right to terminate this commission agency at any time at our option.

" 'DRUMMOND TOBACCO COMPANY,

" 'By H. I. Drummond, V.-P.

" 'The above terms for the sale of Drummond Tobacco Company's tobacco on commission are accepted.  A. H. Schluter & Co.  Dated at Jefferson, Texas, ————, 1894.'  Said contract was not dated, except to give the year.

"4.  Since 1892 the said Schluter & Co. had been procuring tobacco of plaintiff.  Schluter & Co. would order what tobacco they wanted from the traveling men of plaintiff, and the same would be shipped out to them.  After the shipment of each bill of tobacco, plaintiff would draw an acceptance of same date of the invoice of tobacco for the amount of the bill, less the commission on same due Schluter & Co., due sixty days after date, and forward the same to Schluter & Co., then they would accept same, and at the maturity thereof the same would be by plaintiff presented to said Schluter &Co. for payment, and they would pay the same, whether they had sold the goods for which the same was given or not.  The acceptance drawn was always in the following form:

" ' STATEMENT.

" 'Date of Invoice.   $   cts.   No. 11431.   Drummond Tobacco Co.
" '8-6               189.66    $569       St. Louis, August 6, 1894.
                    380.

                    —————

                    567.66.

" 'Sixty days after date, pay to ourselves five hundred, sixty-nine and 66-100 dollars, with current rate of exchange.  .Value received, and charge to account of

" 'DRUMMOND TOBACCO COMPANY,

" 'Clarence Jones.

" 'To A. H. Schluter & Co., Jefferson, Texas.'

"Plaintiff disposed of tobacco in this way to jobbers all over the State of Texas, and uniformly conducted their business this way.

"5. About October, 1895, plaintiff sent to Schluter & Co. a new contract to be signed, and it was signed by Whiteman, general manager for Schluter & Co., at Greenville, and returned to plaintiff. Subsequently, A. H. Schluter objected to it, and Whiteman demanded its return from plaintiff, which was done, and it was destroyed. The material difference between it and the contract above set out was, that it stated the goods were on consignment, and were the property of the Drummond Tobacco Company until paid, and would not have to be paid for until sold, and that plaintiff reserved the right to take possession of the property at any time.

"6. The goods when sold by Schluter & Co. would be sold as other goods, and they usually sold at the price fixed by plaintiff, though sometimes for less, but never reported this fact to plaintiff, but plaintiff's traveling man knew it.

"7. In shipping out the tobacco the plaintiff used the following bill head:

" 'St. Louis, October 18, 1895.

" 'Consigned to A. H. Schluter & Co., agents, Jefferson, Texas.

" 'Drummond Tobacco Company,

" 'We will mail checks for all claims against us. Please do not deduct from remittances.'

"And in making a statement of an account, used the following heading:

" 'St. Louis, May 29, 1896.

" 'A. H .Schluter & Co., Agents, Jefferson, Texas.

'To Drummond Tobacco Co., Dr.

'Manufacturers of Plug Tobacco, Fourth and Spruce Streets.

'Aug. 3. To mdse ....................................$93.60, etc.'

"8. From August 3 to August 21, 1895, plaintiff shipped to said Schluter & Co. goods aggregating in value $1023.26, and on October 1, plaintiff shipped to said Schluter & Co. goods aggregating in value $2196, and on October 18, goods aggregating in value $278.40, making a total from August 3 to October 18 of $3497.66, and on this they credited the account as follows, viz:

| | | |
|---|---|---:|
| Aug. 29, | Mdse. returned .............................$ | 95 21 |
| Sept. 2, | Commission ................................ | 120 80 |
| Oct. 29, | Cash ...................................... | 569 66 |
| Nov. 23, | Cash ...................................... | 239 20 |
| Nov. 30, | Commission ................................ | 330 00 |
| | Total credits ...................................$1,354 | 87 |

And claimed a balance due at that date from said Schluter & Co. of

$2142.79, and on or about November 25, 1895, plaintiff caused to be presented to said Schluter & Co., at Greenville, Texas, by the Greenville National Bank of said city, its acceptance in the form hereinbefore set out for the balance of said bill, and said Schluter & Co. declined to accept the same.

"9.   On to wit, November 29, 1895, said A. H. Schluter & Co. made a chattel mortgage, whereby they conveyed all their merchandise on hand, both at Greenville and Jefferson, Texas, to defendants H. W. Williams and W. T. Atkins, as trustees, to secure certain valid indebtedness amounting to $51,874.95, and that defendants took possession of said stocks of merchandise, and the parties secured in said mortgage accepted thereunder before the sequestration suit hereinafter referred to was filed."

The court then finds that the property sequestered was included in the stock at Greenville, itemizing it, and that its value was $1019.16.   That on December 21, 1895, plaintiff instituted this suit, claiming said tobacco, and caused a writ of sequestration to issue, whereby the sheriff seized and took the same from the possession of defendants herein, who were at the time holding the same as trustees under the chattel mortgage, a copy of which is attached to their answer, and that defendants executed and delivered to said sheriff a replevin bond in due form of law for said tobacco, properly conditioned and with proper sureties, and the tobacco was delivered to defendants.

"10.   Abe Strauss, who was in 1895 general agent for plaintiff in Texas, testified that he supposed the reason that plaintiff put out its goods in the way it did was that it wanted a good price, and the jobbers wanted the goods.   Then to the question as follows, "Now, wasn't their object in fact to maintain prices on their goods?" he answered, "To maintain prices on their goods I suppose was their purpose."

*"Conclusions of Law.*—(1).   I conclude that the facts found do not show a sale, and that the title to the goods shipped by the Drummond Tobacco Company to Schluter & Co. did not pass, and that the latter were simply the agents of the former.   Williams and Atkins are not entitled to protection as innocent purchasers.   As Schluter & Co. had no title to the goods, their trustees acquired none by the mortgage, neither did the beneficiaries named in the mortgage.

"(2).   I further conclude that the contract between the tobacco company and Schluter & Co. does not come with the provisions of the Act of March 30, 1889, known as the Anti-Trust Law.   The contract is therefore enforcible.

"(3).   Plaintiff is entitled to the relief sought."

*Opinion.*—We find ourselves unable to reach the legal conclusions pronounced by the trial judge; on the contrary, we think the facts found to be true clearly manifest that the intention of the contracting parties was that title to the tobacco should pass from the Drummond Tobacco Company to A. H. Schluter & Co.   It appears to us that every element neces-

sary to a sale of personal property is to be found in the terms of the contract between these parties. A. H. Schluter & Co. became absolutely bound to pay in full for every shipment of the tobacco made to them; they were given no right to return the tobacco under any circumstances, and the Drummond Tobacco Company did not reserve the right to retake the tobacco. The dealings of the parties clearly show that it was never contemplated that the relation of principal and agent should exist between them. It is true that the contract is called an agency by its terms, and that it says that the title to the tobacco is to remain in the Drummond Tobacco Company until sold by A. H. Schluter & Co.; but these statements in the contract are not of controlling effect. In Herryford v. Davis, 102 U. S., 235, it is said: "What then is the true construction of the contract? The answer to this question is not to be found in any name which the parties may have given to the instrument, and not alone in any particular provision it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account. * * * It is quite unmeaning for parties to a contract to say it shall not amount to a sale, when it contains every element of a sale and transmission of ownership. This part of the contract is to be construed in connection with the other provisions, so that, if possible or so far as possible, they all may harmonize."

In the case of Mack v. Drummond Tobacco Co., 67 Northwestern Reporter, 174, a contract quite similar in its terms was held by the Supreme Court of Nebraska to be a sale and not an agency.

In Arbuckle Bros. v. Kirkpatrick, 39 Southwestern Reporter, 3, the Supreme Court of Tennessee discusses fully the principles here involved, and tested by that decision, the contract here in question should be regarded and treated as a sale.

In the case of Kaufman v. Alexander, 53 Texas, 562, while it does not decide the exact point, the general principles announced are applicable, and they are in harmony with the cases above cited.

The same may be said of Texas Brewing Co. v. Anderson, 40 Southwestern Reporter, 737. The only purpose outside of an ordinary sale, which appears to us as reasonably discoverable from the contract and dealings of the parties, is that the Drummond Tobacco Company should have the right to fix, from time to time, the price at which the tobacco should be sold. Even if A. H. Schluter & Co. had agreed absolutely to the price at which they would sell the tobacco, this would not have neutralized the elements of a sale and constituted the contract an agency. It would have been a personal covenant, of no controlling effect in determining the question here involved. It is quite unnecessary to determine how far such an element in a contract would be affected by the anti-trust statute.

The judgment of the court below is reversed, and judgment is here rendered for appellants.

*Reversed and rendered.*

Writ of error denied.