ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, LIMITED, OF ZURICH, SWITZERLAND v. SAFE-T-KROS DRUG COMPANY.

[No. 13,800. Filed February 28, 1930.]

*Frederick C. Crumpacker, Edwin H. Friedrich* and *James L. Sullivan*, for appellant.

*W. W. Miller* and *R. R. Pyatt*, for appellee.

NICHOLS, J.—Action by appellee to recover on an insurance policy. The complaint is in two paragraphs. Appellant filed answer in general denial to both paragraphs. The cause was tried by the court, evidence heard, and a decision rendered in favor of appellee, on which there was a judgment against appellant for $2,412.57. Appellant filed its motion for a new trial, which was overruled, and this appeal followed. It is assigned that the trial court erred in overruling appellant's motion for a new trial, which presents that the decision is not sustained by sufficient evidence, and that it is contrary to law.

The facts show that appellant issued a policy of burglary insurance to appellee covering loss of or damage to money, securities and merchandise by robbery. Appellee was the owner and operator of a drug store in the city of Gary, and, on May 10, 1926, it was robbed of money and securities in the sum of $2,412.57, $2,000 of which was obtained by appellee from the South Side Trust and Savings Bank of Gary, Indiana, under two written contracts, dated May 3 and May 6, 1926, respectively, and which, in substance, were respectively that, in consideration of having received from the South Side Trust and

Savings Bank $1,000 for the purpose of using said sum for cashing pay checks of the Illinois Steel Company, or the American Sheet and Tin Plate Company, or the American Bridge Company, or the Gary Screw and Bolt Company, or the Elgin, Joliet and Eastern Railway Company, or the Union Drawn Steel Company, appellee bound itself and its assigns to use the said funds for no other purpose but the one just mentioned, and hereby agreed to return to the said South Side Trust and Savings Bank, not later than May 11, 1926, at 10 o'clock a. m., either the cash so received from it or an equivalent sum in good and sufficient checks drawn by the above-named companies. The contract states that the purpose of the instrument is to show the relationship of bailee of appellee to the said South Side Trust and Savings Bank. While the contracts were signed by Paul Friedman, we construe them as appellee's contracts, Friedman being the president of appellee corporation and its general manager, and the money being used in the conduct of appellee's business. Both contracts were stamped in red ink:

> "South Side Trust & Savings Bank
> Gary, Indiana
> Paid June 8, 1926
> Per_____."

There were seven credits on the first contract, dated successively May 12, 13, 15, 18, 19, 20 and 28, 1926, showing a balance due thereon of $500. The money and securities were lost without any negligence on the part of appellee.

It is the principal contention of appellant that $2,000 of the money held by appellee, at the time of the robbery, was the subject of a bailment, for the loss of which, under the terms of its policy, it is not liable, while appellee contends that the transaction constituted a sale, or

where, as here, cash is used, a loan, and that the money belonged to appellee and is recoverable under the terms of the policy.

The policy contains the following provision: "The company shall not be liable for loss or damage unless the property lost or damaged belongs to the assured, or unless it is held by the assured in trust or as collateral for indebtedness to the assured, or is held by the assured in such capacity as would render the assured legally liable to the owner thereof for such loss or damage."

Appellant argues that the $2,000, being the subject of a bailment and being lost without negligence on the part of appellee, bailee, there would be no liability on the part of appellee to the bailor, and therefore that, under the terms of the policy that was issued, it is not liable to appellee because appellee, bailee, was not legally liable to the bailor for the loss that occurred; in other words, that the loss was the bank's, for which it must recover from its insurer, if any it has, and not the loss of appellee for which it can recover from appellant.

Of the numerous definitions of a bailment, we quote from Black's Law Dictionary a definition which seems most appropriate to the situation here under consideration, as follows: "The test of a bailment is that the identical thing is to be returned; if another thing of equal value is to be returned, the transaction is a sale." Citing *Sturm* v. *Boker* (1893), 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093.

The distinction has many times been made between a bailment and a loan or a sale, to the effect that in a bailment the title remains in the bailor and in a loan the title is transferred to the borrower. If the contract into which the parties entered specifies that the identical thing received must be returned, then it is a bailment, but, if there is an option to return some other thing of equal value, then it is a loan or sale.

In *Lyon* v. *Lenon* (1886), 106 Ind. 567, 7 N. E. 311, wheat was deposited with a warehouseman who, by agreement, had the right to return a like amount of wheat or its money value, and it was held that the transaction constituted a sale, the court saying: "If from the circumstances an agreement could have been inferred, that the plaintiff's wheat might be sold without keeping either that or any other to replace it on demand, we are unable to conceive how it could have been deemed a bailment. Where wheat is received under the circumstances supposed, if the dealer has the right, at his pleasure, either to ship and sell the same on his own account, and pay the market price on demand, or retain and redeliver the wheat or other wheat in the place of it, the transaction is a sale. It is only where the bailor retains the right from the beginning to elect whether he will demand the redelivery of his property or other of like quality and grade, that the contract will be construed to be one of bailment. If he surrenders to the other the right of election, it will be considered a sale, with an option on the part of the purchaser to pay either in money or property as stipulated. The distinction is, can the depositor, by his contract, compel a delivery of wheat, whether the dealer is willing or not? If he can, the transaction is a bailment. If the dealer has the option to pay for it in money or other wheat, it is a sale."

In *Carlisle* v. *Wallace* (1859), 12 Ind. 252, 74 Am. Dec. 207, Wallace placed in Carlisle's mill 400 bushels of wheat upon the agreement that the latter was at liberty to mix it with his own, convert it into flour when he pleased, sell the flour and appropriate the proceeds to his own use, and, whenever Wallace saw fit, he had the right to exact from Carlisle the same quantity of the same kind of wheat, or the amount of flour 400 bushels of wheat would make, or the price of wheat per bushel in money. It was held that, as neither the identical wheat nor the

flour made from it was to be returned, and the wheat was to be mixed with that of Carlisle's and used by him as he pleased, the contract was one of sale and not of bailment. This statement of the holding in the Carlisle case is set out with approval in *Finch, Admr.*, v. *McClellan* (1921), 77 Ind. App. 533, 130 N. E. 13, 131 N. E. 236, in which case a number of other authorities are cited to the same effect. The Finch case also states: "We should keep in mind that the distinction between an obligation to return the specific thing received, or of returning something of equal value, is the distinction between a bailment and a sale." We cite as authorities sustaining this principle: *Ewing* v. *French* (1825), 1 Blackf. (Ind.) 354; *Havens* v. *Church* (1895), 104 Mich. 135, 62 N. W. 149; *Buswell* v. *Bicknell* (1840), 17 Me. 344, 35 Am. Dec. 262; *Hurd* v. *West* (1827), 7 Cow. (N. Y.) 752.

The foregoing authorities, with many others that might be cited, make it clear that, under the law, no bailment takes place when the alleged bailee has the option either to return the article received or its equivalent in some other commodity. In the instant case, appellee had the privilege of returning the cash so received from the bank or *an equivalent sum in good and sufficient checks drawn by the above-named companies.*

It is to be observed that the contract does not require that appellee should return to the bank the checks which were to be exchanged for money, but that he might return checks of these companies regardless of the source from which they were obtained. They might have been received by appellee in payment for real estate or goods and merchandise sold by appellee to the companies named. There was not necessarily any relation whatever between the checks which appellee had a right to return to the bank and the money obtained to be used in cashing checks issued by such companies.

The mere fact that the contract states that its purpose is to show the relationship of appellee as bailee to the bank is not within itself controlling. The nature of the transaction must be determined from the entire contract, and, if ambiguous, from the construction put upon it by the parties themselves. In *Irons* v. *Kentner* (1879), 51 Iowa 88, 50 N. W. 73, 33 Am. Rep. 119, a contract was held to be a bailment, although the parties called it a sale. In *National Car, etc., Builder* v. *Cyclone, etc., Plow Co.* (1892), 49 Minn. 125, 51 N. W. 657, a contract was held to be a sale, though the parties called it a bailment. To the same effect, see *Wright* v. *Paine, Admr.* (1878), 62 Ala. 340, 34 Am. Rep. 24; *Williams* v. *Drummond Tobacco Co.* (1897), 17 Tex. Civ. App. 635, 44 S. W. 185; *Heryford* v. *Davis* (1880), 102 U. S. 235, 26 L. Ed. 160.

In the last case cited, the court asked the question with reference to the contract under consideration, "What, then, is the true construction of the contract?" And then answered: "The answer to this question is not to be found in any name which the parties may have given to the instrument, and not alone in any particular provisions it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account."

It seems clear that, controlled by the principles above stated, the transaction here involved constituted a loan and not a bailment.

Having reached this conclusion, we are confirmed therein by the construction put upon the transaction by the parties, as appears by appellee's evidence on cross-examination, which, in narrative form, so far as here involved, was as follows: "I borrowed that money from the bank. This amount of $2,000 was taken over

by me to the store for the purpose of cashing checks and the handling of business. The $500 in checks was cashed either by this money or some other money that was in the store. We didn't keep the money separated. This particular money I was robbed of, and just as soon as the robbery occurred, I made arrangements with the bank to pay them that money back by paying $50 a day and you will see the notations down there. [Credits on first contract.] I started paying the money back on May 21. I paid them $50 and then I paid every day $50, and then things were in a condition where I couldn't pay them any more. Then I made arrangements where the bank took a note for the balance of the money and that is why they cancelled these two notes. It was a custom of mine to borrow money. I had a certain credit or allowance. I did this right along."

Appellant contends that there was no sufficient proof of loss, but we are not in harmony with this contention. The purpose of requiring such proof is to apprise the insurance company of the loss that has occurred. It appears by the evidence that appellant made an investigation satisfying itself as to the facts and, without further objection, offered a partial payment of the loss. This was sufficient to constitute a waiver of formal notice and proof of loss, or of any defects therein. *Providence Washington Ins. Co.* v. *Wolf* (1907), 168 Ind. 690, 80 N. E. 26, 120 Am. St. 395.

We find no reversible error.

Judgment affirmed.

McMahan, J., not participating.