# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-2210/2294

_____

| | | |
|---|---|---|
| Loren Zutz; Deb Zutz; Ron Zutz, doing business as Zutz Farms, | * * * | |
| Appellees/Cross-Appellants, | * * | |
| v. | * * * | Appeals from the United States District Court for the District of Minnesota. |
| Case Corporation, | * * | |
| Appellant/Cross-Appellee. | * | |

_____

Submitted: February 17, 2005
Filed: September 7, 2005

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Loren Zutz, Deb Zutz, and Ron Zutz, doing business as Zutz Farms (Zutzes), operate a family farm in Minnesota. The Zutzes purchased a 4010 Concord Air Drill (4010 Drill)[1] from Case Corporation (Case), a Delaware corporation with its principal place of business in Wisconsin. After using the 4010 Drill for two planting seasons, the Zutzes traded the 4010 Drill for a larger 5010 Concord Air Drill (5010 Drill). The Zutzes allege the 4010 Drill and the 5010 Drill (Drills) damaged the Zutzes' crops by

_____

[1]An air drill injects seeds into the soil.

unevenly distributing herbicide in their preplant-herbicide incorporated fields. The Zutzes sued Case, alleging (1) breach of express warranty, (2) breach of implied warranties, (3) fraud and negligent misrepresentation, and (4) violation of the Minnesota Consumer Fraud Act (MCFA), Minnesota Statutes sections 325F.68 through .70. After the district court granted Case's motion for summary judgment on all counts except fraud, the case was tried to a jury, and the Zutzes received a judgment of $14,925. Case appeals, arguing the district court erred in denying, in part, its motion for judgment as a matter of law. The Zutzes cross appeal, arguing the district court erred in denying their motion for new trial and in granting summary judgment, in part, to Case. We affirm in part and reverse in part.

## I. BACKGROUND

### A. Factual Summary

In late 1997, the Zutzes' agronomist recommended the Zutzes purchase a Concord Air Drill. In early 1998, the Zutzes went to Evergreen Implement (Evergreen), the local farm equipment dealer, "to start dealing on this piece of equipment." In investigating the 4010 Drill, one of the Zutzes' main concerns was whether the 4010 Drill would be compatible with their practice of incorporating herbicide into the soil before planting.

The Zutzes asked Evergreen salesman Harvey Sedlacek (Sedlacek) if the 4010 Drill would be compatible with the Zutzes' preplant-incorporated herbicide farming practices. Sedlacek told the Zutzes he would "look into it and check it out." Sedlacek telephoned Case to discuss the Zutzes' inquiry. Although Sedlacek did not identify the Zutzes by name, Sedlacek would have told Case he was making an inquiry on behalf of a customer. Sedlacek asked Case whether the 4010 Drill was compatible with preplant-incorporated herbicide. Case told Sedlacek, "it was a workable situation. The machine would do the job." Sedlacek then told the Zutzes the 4010 Drill "would work as a second-pass implement." Loren Zutz testified that Sedlacek assured him the 4010 Drill would work with the Zutzes' use of preplant-

incorporated herbicide.  The Zutzes relied on Sedlacek's representations in deciding to rent, and subsequently to purchase, the 4010 Drill.

Before selecting the 4010 Drill, Loren Zutz looked at a brochure distributed by Case.  The brochure states the "disc leveler" option works "in conventional to no-till situations.  The soil won't move from one opener to the next, reducing bunching and plugging."  In April 1998, the Zutzes rented the 4010 Drill from Evergreen.  Under the terms of the rental agreement, if the Zutzes exercised their option to purchase the 4010 Drill at the expiration of the rental term, all rental payments were to be applied to the purchase price.

The Zutzes experienced some crop problems after using the 4010 Drill, but they assumed the crop problems were caused by seed distribution problems.  In June 1998, Case sent its representative Jim Lilleberg (Lilleberg) to the Zutzes' farm to address the seed distribution problems.  Ron Zutz asked Lilleberg "how this machine worked with fields that were incorporated with chemical."  Lilleberg replied, "[i]t will work fine. . . .  And . . . it would work good . . . for another trip for incorporating."

Believing the seed distribution problems had been fixed, the Zutzes purchased the 4010 Drill on July 1, 1998.  The sale was perfected on a "Customer Purchase Order for John Deere Products."   The Customer Purchase Order contained the following **"IMPORTANT WARRANTY NOTICE"**:

> The John Deere warranty applicable to new John Deere product(s) is printed on the back side of this document. . . .  The new product warranty is part of this contract.  Please read it carefully.  **YOUR RIGHTS AND REMEDIES PERTAINING TO THIS PURCHASE ARE LIMITED AS SET FORTH IN THE WARRANTY AND THIS CONTRACT.   IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS ARE**

**NOT MADE AND ARE EXCLUDED UNLESS SPECIFICALLY PROVIDED IN THE JOHN DEERE WARRANTY**.

(emphasis in original).  The Customer Purchase Order did not mention Case.

In 2000, the Zutzes exchanged the 4010 Drill for a 5010 Drill.  The 5010 Drill is configured exactly like the 4010 Drill, but is ten feet wider.  The sale was memorialized on the same kind of "Customer Purchase Order for John Deere Products."  The same John Deere warranty notice and warranty were given with the 5010 Drill purchase order.

After the 2000 planting season, the Zutzes hired an agronomist to test the 5010 Drill's tillage features on herbicide-treated soil.  The test showed the 5010 Drill "threw" the soil during seeding, resulting in uneven herbicide distribution and crop damage.

The Zutzes reported to their federal crop loss insurer that the crops were damaged by weather and insects.  The Zutzes' federal crop insurer paid approximately $500,000 to the Zutzes during the period the Drills allegedly damaged the Zutzes' crops.

## B.    Procedural History

In June 2002, the Zutzes sued Case in Minnesota state court, alleging (1) breach of express warranty, (2) breach of implied warranties, (3) fraud and negligent misrepresentation, and (4) violation of the MCFA.  Case removed the lawsuit to federal court based on diversity of citizenship.

The district court granted summary judgment to Case on the following claims: (1) breach of express and implied warranties, because such claims were time-barred; (2) negligent misrepresentation, because Minnesota law bars negligent

misrepresentation claims arising out of commercial transactions; and (3) violation of the MCFA, because the Zutzes failed to show their lawsuit was for the public benefit.

In March 2004, the case proceeded to trial on the Zutzes' reckless misrepresentation claim. The jury found in favor of the Zutzes and awarded $29,850 in damages. However, the jury found the Zutzes' negligence caused 50% of their damages, so the Zutzes were awarded $14,925.

Both parties filed post-trial motions. Case filed a motion for judgment as a matter of law, and the Zutzes filed a motion for new trial. The district court denied both motions. Case appeals the district court's denial of its motion for judgment as a matter of law, contending (1) reckless misrepresentation is not a recognized cause of action in Minnesota, (2) the Zutzes failed to prove the essential elements of reckless misrepresentation, and (3) there is no evidence proving Sedlacek was Case's agent.

The Zutzes cross appeal the district court's denial of their motion for new trial, contending the district court (1) failed to instruct the jury properly on causation, (2) erroneously admitted evidence of insurance payments, and (3) failed to cure prejudicial remarks made by Case's counsel. The Zutzes also appeal the district court's adverse grant of summary judgment on their breach of express and implied warranty claims.

## II.    DISCUSSION
### A.    Motion for Judgment as a Matter of Law

Case appeals the district court's denial of its motion for judgment as a matter of law. We review de novo a district court's denial of a motion for judgment as a matter of law, examining the evidence in the light most favorable to the prevailing party and viewing all inferences in the prevailing party's favor. Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 863 (8th Cir. 2004). We must determine

whether the record contains sufficient evidence to support the jury's verdict. Id. "A mere scintilla of evidence is inadequate to support a verdict, and judgment as a matter of law is proper when the record contains no proof beyond speculation to support the verdict." Larson v. Miller, 76 F.3d 1446, 1452 (8th Cir. 1996) (en banc) (internal quotation and citation omitted). The parties agree Minnesota law governs this diversity action. See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002) (applying the law of the forum state in diversity negligence action).

### 1.    Reckless Misrepresentation

Case contends reckless misrepresentation is not a recognized cause of action in Minnesota. Like the district court, we disagree with Case's contention. Although the Minnesota Supreme Court has not expressly recognized reckless misrepresentation as a cause of action, we conclude Minnesota common law, statutes, and model jury instructions support the district court's determination that the tort of reckless misrepresentation would be recognized as a cause of action by the Minnesota Supreme Court.

A concurring opinion in a Minnesota Supreme Court case and a Minnesota Court of Appeals opinion both discuss reckless misrepresentation as a viable cause of action. In Florenzano v. Olson, 387 N.W.2d 168 (Minn. 1986), the majority opinion did not expressly recognize a cause of action for reckless misrepresentation, while discussing claims for fraudulent and negligent misrepresentation. However, Justice Simonett, in his concurring opinion, described three types of actionable frauds, one of which he termed "reckless misrepresentation." Id. at 177 (Simonett, J., concurring specially). Justice Simonett stated reckless misrepresentation occurs "when the representer asserts a fact as of his own knowledge without knowing whether it is true or false." Id. n.2. Following Florenzano, the Minnesota Court of Appeals recognized reckless misrepresentation as a valid cause of action in Williams v. Tweed, 520 N.W.2d 515, 517 (Minn. Ct. App. 1994) (stating "[t]hree types of misrepresentations fall under this broad category of fraud: reckless misrepresentation,

negligent misrepresentation, and deceit," citing Justice Simonett in <u>Florenzano</u>). We are satisfied Minnesota common law has sufficiently recognized a cause of action for the tort of reckless misrepresentation.

The Minnesota legislature has also recognized reckless misrepresentation. The economic loss doctrine, as codified in the Minnesota Statutes, recognizes reckless misrepresentation as a cause of action. <u>See</u> Minn. Stat. § 604.101, subd. 4 ("A buyer may not bring a common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly."); <u>see also</u> Minn. Stat. § 604.101, Reporters' Notes 2000, subd. 4 ("An intentional or reckless misrepresentation undermines the bargaining process, and this statute therefore permits tort remedies for those types of misrepresentations. . . . Whether a misrepresentation is 'intentional' or 'reckless' is to be determined under the applicable common law.") (citing <u>Florenzano</u>).

The Minnesota model jury instructions provide additional support for the conclusion Minnesota law recognizes reckless misrepresentation as a cause of action. The Minnesota model jury instructions contain a model instruction for reckless misrepresentation claims. <u>See</u> 4 Minn. Prac. CIVJIG 57.10, Use Note ("This instruction is intended for use in cases involving intentional or reckless misrepresentations."). The reckless misrepresentation instruction also has a corresponding special verdict form. <u>See</u> 4 Minn. Prac. CIVJIG 57.90.

We conclude the district court correctly determined the tort of reckless misrepresentation exists in Minnesota. Therefore, the district court did not err in denying Case's motion for judgment as a matter of law on this claim.

### 2. Sufficiency of the Evidence

Under Minnesota law, the elements of fraudulent misrepresentation are: "(1) there was a false representation by a party of a past or existing material fact

susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance." Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986).

On appeal, Case argues the Zutzes failed to prove the following elements: "(a) Case falsely represented a past or present material fact to the Zutzes; (b) Case consciously made the alleged representation without knowing whether it was true or false; (c) Case intended the Zutzes to rely on the false representation; and (d) the Zutzes relied and acted on the false representation." Essentially, Case asks this court to reexamine conflicting testimony, a task that should only be resolved by the jury. See, e.g., United States v. Dabney, 367 F.3d 1040, 1043 (8th Cir. 2004). Here, the jury resolved conflicts in the Zutzes' favor, and the record contains sufficient evidence to support the jury's findings.

Case first claims the Zutzes failed to prove Case made any false representations to the Zutzes regarding the 4010 Drill's ability to work with preplant-incorporated herbicide. Case notes Sedlacek only told the Zutzes the 4010 Drill "would work as a second-pass implement," which is a separate issue from whether the 4010 Drill would work with preplant chemicals. Case also highlights Loren Zutz's testimony that it was a true statement the 4010 Drill will work with preplant chemicals, "if [the 4010 Drill is] equipped right."

Case's argument fails for two reasons. First, sufficient evidence supports the jury's finding that Case made false representations to the Zutzes. The jury very well may have credited Loren Zutz's testimony that Sedlacek assured the Zutzes the 4010 Drill would work with preplant-incorporated herbicide. Even if the jury credited Sedlacek's testimony he only told the Zutzes the 4010 Drill "would work as a second-

pass implement," the jury heard evidence that Lilleberg, a Case representative, told the Zutzes the 4010 Drill would work fine with preplant-incorporated herbicide. Additionally, the Case brochure stated the Drill worked "in conventional to no-till situations. The soil won't move from one opener to the next." Second, the jury heard evidence that Lilleberg's and the brochure's representations were false. In particular, Case's own expert, Jacky Payne (Payne), testified the 4010 Drill could cause soil bunching, which then could cause the Zutzes' problems with herbicide incorporation. The Zutzes' expert, Dr. Richard Fawcett, explained the 4010 Drill configuration was incompatible with the Zutzes' farming practices, because the Drill created an uneven distribution of herbicide in preplant-incorporated herbicides.

Case next argues the Zutzes failed to prove Case knew whether its representations were true or false, because the Zutzes did not present any evidence regarding Case's state of mind. This argument fails. Payne, Case's own expert, testified Case could not have known the truth or falsity of its representations, because Case never tested the Drill for compatibility with preplant-incorporated herbicide farming procedures. This evidence is plainly sufficient to support the jury's finding Case did not know whether its representations were true or false.

Case further argues the Zutzes failed to present any evidence proving Case intended to induce the Zutzes' reliance. When Sedlacek telephoned Case with the preplant-incorporated herbicide use compatibility inquiry, Case knew Sedlacek was calling about a prospective buyer's question. Viewing the evidence in the Zutzes' favor and giving them the benefit of all reasonable inferences, we conclude the jury reasonably could infer Case answered Sedlacek's question with the hopes the prospective buyer would rely on Case's representation and buy the Case Drill.

Finally, Case maintains the record contains no evidence showing the Zutzes actually relied on Case's representations. Both Ron Zutz and Loren Zutz testified they relied on Sedlacek's representations in deciding to purchase the 4010 Drill.

After reviewing the record, we conclude the Zutzes presented sufficient evidence for the jury to conclude the Zutzes proved each element of their fraud claim. Therefore, the district court correctly determined Case was not entitled to judgment as a matter of law.

### 3. Agency

Case contends the Zutzes' reckless misrepresentation claim fails because the Zutzes failed to prove Sedlacek acted as Case's agent when he advised the Zutzes regarding the 4010 Drill's compatibility with the Zutzes' farming practices. In particular, Case argues no agency relationship existed between Case and Sedlacek/Evergreen, because (1) the written contract between Case and Evergreen states Evergreen is an independent contractor or vendee and not an agent, and (2) the Zutzes presented no evidence indicating Case had any right to control Evergreen's operations.

We need not address Case's agency argument because, as the district court concluded, the Zutzes alleged three misrepresentations–Sedlacek's statements, Lilleberg's statements, and the brochure's statements. Case does not dispute the authorization of the representations made by Lilleberg or those contained in the brochure. We agree with the district court that "[a]ny of these misrepresentations would provide sufficient support for the jury's determination that Case committed a reckless misrepresentation."

### B. Motion for New Trial

The Zutzes cross appeal the district court's denial of their motion for new trial on the grounds the district court (1) failed to instruct the jury properly on causation, (2) erroneously admitted evidence of insurance payments, and (3) failed to cure prejudicial remarks made by Case's counsel. We review a district court's denial of a motion for new trial with great deference, reversing only if the district court clearly abused its discretion. Children's Broad., 357 F.3d at 867.

### 1. Jury Instructions

At the end of trial, the Zutzes requested the district court provide the jury with a definition of direct cause and an instruction on concurring cause, because the evidence presented at trial suggested weather and insects were concurring causes of the Zutzes' crop damage. The Zutzes appeal the district court's denial of both their requested causation instructions.

We review the district court's jury instructions for an abuse of discretion. Mattke v. Deschamps, 374 F.3d 667, 671 (8th Cir. 2004). We will affirm the district court's instructions if, taken as a whole and viewed in light of the particular issues, the instructions fairly and adequately submit the evidence and the applicable law to the jury. Id. (citation omitted). In this diversity action, we apply Minnesota law in reviewing the substance of the jury instructions, and federal law governs our review of the discretion exercised in refusing or admitting the instructions. Id.

The Zutzes argue the district court abused its discretion in refusing to give the Zutzes' requested jury instruction defining direct cause, because the jury had to speculate as to the given instruction's definition of "damages directly caused by relying on Case's misrepresentation." Keeping in mind the broad discretion district courts possess when formulating instructions, and the fact we must consider the instructions as a whole, we conclude the district court did not abuse its discretion in declining to define direct cause. See id.; see also Am. Reliable Ins. Co. v. Modern Homes, Inc., 247 N.W.2d 39, 41-42 (Minn. 1976) (holding trial court's failure to provide a jury instruction defining causation did not warrant a new trial, because an omitted jury instruction is less likely to be prejudicial than a misstatement of the law); Klaman v. Hitchcock, 231 N.W. 716, 717 (Minn. 1930) (stating "[w]hile 'proximate cause' is often . . . defined to the jury in the charge of the court, we cannot say that it must necessarily be defined. . . . The words are common English words and reasonably well understood even by the layman").

The Zutzes also contend the district court abused its discretion in failing to instruct the jury on concurring cause, because Case presented evidence of more than one cause of the Zutzes' damage. We need not determine whether the district court abused its discretion in failing to include an instruction on concurring cause, because any instructional error was harmless. See Smith v. Kahler Corp., 211 N.W.2d 146, 153 (Minn. 1973) (preferring to instruct "with regard to the meaning of concurring cause," but finding "nothing in this record to prejudice the jury in its consideration and application of the law of direct cause as it affected either party"). Our review of the jury instructions and the special verdict form, when considered as a whole, leads us to conclude the district court sufficiently instructed the jury to answer the critical question: "What amount of money will fairly and adequately compensate [the Zutzes] for the damages they experienced *as a direct result of relying on the false representations*?" (emphasis added).

## 2. Evidence of Insurance Payments

The Zutzes argue the district court erred by admitting evidence showing the Zutzes received approximately $500,000 in insurance payments during the time the Drills were causing damage to their crops. "Under the collateral source rule, a plaintiff may recover damages from a tortfeasor," even though the plaintiff already received money from another source. Hueper v. Goodrich, 314 N.W.2d 828, 830 (Minn. 1982). Evidence related to insurance coverage, however, is admissible to challenge a witness's truthfulness on a material issue in the case. See Wilson v. Home Gas Co., 125 N.W.2d 725, 729 (Minn. 1964).

Case did not solicit evidence regarding the Zutzes' insurance proceeds for the purposes of mitigating the Zutzes' loss or reducing the damage award to the Zutzes. Rather, Case offered evidence of the Zutzes' insurance proceeds on the issue of the Zutzes' credibility. The Zutzes alleged they were seeking damages caused only by the Drills, but evidence in the insurance records demonstrated they actually were seeking a double recovery from Case for damage to their fields caused by weather and

-12-

insects. We conclude the district court did not abuse its considerable discretion in receiving into evidence the Zutzes' receipt of collateral source benefits.

### 3. Improper Remarks

The Zutzes argue a new trial is warranted, because Case's counsel made improper remarks during closing arguments, including (1) attacking the Zutzes' credibility, (2) interjecting counsel's personal opinion, and (3) suggesting the Zutzes committed fraud and withheld documents. "A failure to object to statements made during closing argument waives such an objection." Billingsley v. City of Omaha, 277 F.3d 990, 997 (8th Cir. 2002). Because the Zutzes did not object at trial to the challenged remarks, their present objection fails. See id. We conclude the district court did not abuse its discretion in refusing to grant the Zutzes' motion for new trial.

### C. Motion for Summary Judgment

The Zutzes also appeal the district court's adverse grant of partial summary judgment to Case. Specifically, the Zutzes contend the district court erred in determining their claims for breaches of warranty were untimely. We review de novo the grant of summary judgment. Jennings v. Wentzville R-IV Sch. Dist., 397 F.3d 1118, 1122 (8th Cir. 2005). We will affirm the grant of summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Jennings, 397 F.3d at 1122.

### 1. Whether the Zutzes' Warranty Claims are Time-Barred
#### a. The 4010 Drill

In granting summary judgment to Case on the Zutzes' claims for breaches of warranty, the district court determined the Zutzes' cause of action accrued in April 1998, the date on which Case tendered delivery of the 4010 Drill, because "[i]t was clearly Plaintiffs' intent in April 1998 to purchase the air drill." Accordingly, the district court concluded the Zutzes' warranty claims relating to the 4010 Drill were untimely because the Zutzes did not file suit until June 2002. On appeal, the Zutzes

argue the district court erred in determining the statute of limitations began to accrue in April 1998, because a factual question exists as to whether the Zutzes intended the April 1998 transaction to be a sale.

Federal courts sitting in diversity apply the forum state's statute of limitations. Highland Indus. Park, Inc. v. BEI Def. Sys. Co., 357 F.3d 794, 796 (8th Cir. 2004). Under Minnesota law, actions alleging breach of warranty "must be commenced within four years after the cause of action has accrued." Minn. Stat. §§ 336.2-725(1) (involving sale of goods), 336.2A-506(1) (involving leased goods). The statute of limitations involving the sale of goods begins to run once the seller tenders delivery of the goods. Minn. Stat. § 336.2-725(2). The limitations period for a breach of warranty action involving leased goods begins to run "when the act or omission on which the default or breach of warranty is based is or should have been discovered by the aggrieved party, or when the default occurs, whichever is later." Minn. Stat. § 336.2A-506(2). Whether a transaction is characterized as a lease or a sale depends on the intention of the parties. Nat'l Car & Locomotive Builder v. Cyclone Steam Snow-Plow Co., 51 N.W. 657, 657-58 (Minn. 1892).

Our record review reveals a factual conflict regarding the parties' intent in entering into the April 1998 transaction. For example, when Sedlacek was asked if the April 1998 transaction was "set up as a lease with an agreement to buy," Sedlacek replied, "[i]t was actually a rental." Moreover, Loren Zutz's deposition testimony regarding this subject was unclear:

> Q:   Was it your intention to always purchase [the 4010 Drill], and you just entered into this agreement for some financing reasons?
>
> A.   Yes. Basically there is some tax advantages and we, you know, wanted to make sure maybe it was what we wanted.

-14-

. . . .

Q:    I'm just wondering, did you have an agreement that this rental agreement was going to be put in place, and then you knew you were going to purchase this machine back in, or in July, because of some low rate financing that was going on with Case Credit?

A:    We rented this machine with the intention to buy, okay?

Q:    Okay.

A:    That was how it was done.

Q:    The machine was rented, initially it was a lease with intent to buy?

A:    If everything worked out yes, we wanted to rent it.

Q:    All right. So you took possession sometime in April of '98, with the intent it was going to be your machine to buy?

A:    Possibly.

In light of the conflicting testimony regarding the parties' intent in entering into the 1998 transaction, we conclude the district court erred when it concluded "the 'real intention' of the parties was that the April 1998 transaction was a sale of the air drill." The 4010 Drill was later purchased in July 1998, less than four years before this lawsuit was filed in June 2002. A genuine factual dispute also exists whether the Zutzes discovered or should have discovered any defect or warranty breach before July 1998. See Minn. Stat. § 336.2A-506(2). We, therefore, must reverse the district court's entry of summary judgment in favor of Case on the Zutzes' express and implied warranty claims relating to the 4010 Drill, and remand the cause to permit a jury to determine (1) the parties' intent in entering into the 1998 transaction, and (2) if

intended as a lease, whether the Zutzes discovered or should have discovered the defect or warranty breach before July 1998. If a rental was intended, and the breach not discovered, the Zutzes may pursue their warranty claims for damages to the extent warranty damages exceed the Zutzes' current recovery. See Specialized Tours, 392 N.W.2d at 553 (holding where evidence supports liability under alternative theories of recovery, the plaintiff "cannot be allowed double recovery").

### b.    The 5010 Drill

The district court did not analyze whether the breach of warranty claims involving the 5010 Drill are time-barred. Rather, the district court, without comment, stated, "the breach of warranty claims are barred by the statute of limitations." On appeal, the Zutzes contend their warranty claims involving the 5010 Drill are not time-barred because they purchased the 5010 Drill in January 2000, within the four-year statute of limitations.

We affirm the district court's grant of summary judgment to Case as to the Zutzes' breach of express warranty claim involving the 5010 Drill. No evidence in the record indicates Case expressly warranted the 5010 Drill,[2] and no evidence indicates Case extended any representations regarding the 4010 Drill to the 5010 Drill. Therefore, we conclude the district court correctly dismissed the Zutzes' claim for breach of express warranty on the 5010 Drill.

We reverse the district court's entry of summary judgment in favor of Case on the Zutzes' breach of implied warranty claims involving the 5010 Drill. The Zutzes traded the 4010 Drill for the 5010 Drill in January 2000, and they filed their complaint in June 2002. Because the Zutzes filed their complaint within the four-year

---

[2]Under Minnesota law, a seller creates an express warranty that the goods shall conform to an affirmation or promise by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Minn. Stat. § 336.2-313(1)(a).

statute of limitations, we conclude the district court erred in finding the Zutzes' implied warranty claims relating to the 5010 Drill were time-barred. We remand the cause to permit the Zutzes to pursue their implied warranty claims for damages to the extent warranty damages exceed the Zutzes' current recovery.

### 2. Case's Defenses Upon Remand

We note Case has several defenses available to it upon remand of the Zutzes' breach of warranty claims, including Case's purported warranty disclaimer and application of comparative fault principles to the Zutzes' breach-of-warranty consequential damages.[3] Because the parties did not present these defenses to the district court, we decline to consider these defenses for the first time on appeal. See, e.g., Chatfield v. Sherwin-Williams Co., 266 N.W.2d 171, 176 (Minn. 1978).

## III. CONCLUSION

We affirm the district court's (1) denial of Case's motion for judgment as a matter of law, (2) denial of the Zutzes' motion for new trial, and (3) grant of summary judgment to Case on the Zutzes' breach of express warranty claim relating to the 5010 Drill. We reverse the district court's grant of summary judgment to Case on the Zutzes' (1) breach of express and implied warranty claims relating to the 4010 Drill, and (2) breach of implied warranty claims relating to the 5010 Drill.

_____

---

[3]In breach of warranty actions in Minnesota, comparative fault is a defense to consequential damages, but comparative fault does not apply to general and incidental damages. See Peterson v. Bendix Home Sys., 318 N.W.2d 50, 53, 54 (Minn. 1982).