# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-4074

———————

Creative Marketing Associates, Inc.,       *
                                        *

           Appellant,             *
                                        *   Appeal from the United States

      v.                        *   District Court for the
                                        *   Western District of Missouri.

AT&T,                          *
                                        *

           Appellee.            *

———————

Submitted: October 19, 2006
Filed: February 2, 2007

———————

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Creative Marketing Associates, Inc. (CMA) appeals from the district court's[1] grant of summary judgment to AT&T on CMA's claims for money owed, breach of fiduciary duty, and fraud, as well as from the denial of CMA's claim for the imposition of a constructive trust. We affirm.[2]

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

[2]CMA's late-filed motion for leave to file a supplemental appendix is denied.

## I.

On November 5, 1991, CMA and AT&T entered into a billing services agreement (BSA), pursuant to which AT&T agreed to provide 900 number billing services for a telephone spelling game created by CMA. The agreement provided that AT&T would bill individuals who called CMA's spelling game and that AT&T would keep some of these proceeds as part of its fee and remit the balance to CMA. The BSA also stated that if callers disputed or refused to pay for their calls to the game (resulting in "uncollectables"), the uncollected charges would be withheld from CMA (referred to by the parties as "chargebacks").[3] The spelling game was operated from November 1991 through December 1992, with AT&T providing billing services. Although the chargebacks assessed against CMA remained low initially, they eventually grew to exceed 3% percent of total revenue.

On January 23, 2003, CMA sued AT&T for money owed, breach of fiduciary duty, and fraud, claiming that AT&T had promised CMA that chargebacks would run between 2-3% of total revenue. CMA also sought the imposition of a constructive trust.[4] The district court granted summary judgment to AT&T on the claim for money owed and determined that the breach of fiduciary duty and fraud claims were barred by the applicable statutes of limitations. The district court also declined to impose a constructive trust.

---

[3]The BSA states in pertinent part that "AT&T may remove from a Caller's bill any amounts associated with the offer(s) which the Caller disputes or refuses to pay" and that "[a]ny amounts which have been removed from callers' bills as a result of a dispute or refusal to pay" will be deducted from the monies remitted to CMA.

[4]CMA suggests that it also sought an accounting. The record does not reflect this.

**II.**

The crux of CMA's claim for money owed is its contention that AT&T had falsely promised CMA that chargebacks would not exceed 2-3% of total revenue. CMA argues that chargebacks in excess of this amount should not have been assessed against CMA and that AT&T therefore owes CMA this money. In support of this claim, CMA cites two statements: an oral promise purportedly made before the execution of the BSA that chargebacks would run between 2-3% and a written statement made after the execution of the BSA. The first statement was properly excluded by the district court under the parol evidence rule. As the district court noted, the BSA is an integrated agreement with an integration clause stating that "[t]his is the entire agreement between the parties with respect to the services provided hereunder and supersedes all prior agreements, proposals, or understandings, whether written or oral." We agree with the district court that, under New Jersey law, which governs the interpretation of the contract, the BSA cannot be modified or supplemented by any statements or promises made prior to its execution.[5] See Schlossman's, Inc. v. Radcliffe, 70 A.2d 493, 495 (N.J. 1950) (noting that when a writing purports to contain the entire agreement between the parties, parol evidence cannot be used to vary or supplement the agreement). Accordingly, CMA's reliance on the first statement is unavailing.

The second statement upon which CMA relies was contained in a letter written by an AT&T salesman, Tony Dandridge, in which Dandridge informed CMA that "AT&T's industry average on uncollectables run[s] between 2% and 3%." Although this letter was written after the execution of the BSA and thus does not fall within the ambit of the parol evidence rule, Dandridge's statement about AT&T's industry average does not constitute a promise that CMA's particular chargebacks would be

---

[5]We find to be without merit CMA's contention that the BSA's ambiguity vis-à-vis chargebacks and the fraud exception render the parol evidence rule inapplicable.

less than 3% of total revenue.  Accordingly, this second statement does not support CMA's contention that chargebacks in excess of 3% were improper.

CMA also claims on appeal that it was exempt from all chargebacks.  We reject this contention, as it is flatly contradicted by the BSA.  We also reject CMA's contention that AT&T acted in bad faith.  CMA claims that chargebacks were inappropriate because AT&T did not undertake good faith efforts to collect money from the callers, contrary to its contractual promise to do so, and that this failure resulted in additional chargebacks.  For example, CMA states that one caller made 341 calls but was not charged because he disclaimed all knowledge of the calls.  Another caller reportedly made more than 149 calls, but suggested that he had dialed the wrong number.  AT&T apparently removed the charges from these callers' bills and assessed the removed sums in the form of chargebacks against CMA.  Although CMA claims that this constituted bad faith, the BSA explicitly provides that AT&T may remove charges that a caller disputes or simply refuses to  pay.  CMA has not given us any reason to conclude that the removal of disputed charges, a procedure explicitly established by the contract, constitutes bad faith.  In sum, because there is no genuine issue of material fact in dispute, the district court correctly granted AT&T's motion for summary judgment on the money owed claim.

We also agree with the district court's determination that the fraud and breach of fiduciary duty claims are barred by the applicable Missouri statutes of limitations, which are controlling in this diversity case. Zutz v. Case Corp., 422 F.3d 764, 774 (8th Cir. 2005).  Under Missouri law, there is a five-year statute of limitations for breach of fiduciary duty claims.  Mo. Rev. Stat. § 516.120(4).  This limitation begins to run when damage is sustained and capable of being discovered and not when the plaintiff learns of the injury or wrongful conduct.  Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997).  The statute of limitations for fraud is also five years.  Mo. Rev. Stat. § 516.120(5).  This period begins to run upon discovery of the facts constituting the

fraud or when the fraud would have been discovered by the exercise of due diligence. Rademeyer v. Farris, 284 F.3d 833, 836 (8th Cir. 2002) (construing Missouri law).

The district court concluded that the alleged fraud and breach of fiduciary duty were discovered or discoverable by 1992, when CMA learned that chargebacks were exceeding the 2-3% of total revenue allegedly promised by AT&T. Accordingly, the district court determined that because CMA had until 1997 to file its claims for fraud and breach of fiduciary duty, its 2003 suit was time-barred.

CMA claims that it "did not and could not actually know of AT&T's fraud and breach of fiduciary duty until 2005 during AT&T's deposition." (CMA Brief at 59). In other words, CMA appears to argue that it could not have discovered the alleged fraud or breach of fiduciary duty until after it had already sued AT&T on these very claims. We reject this argument and concur in the district court's analysis of this issue. CMA also claims that the limitations periods should have been equitably tolled because AT&T improperly concealed the causes of action from CMA and because AT&T pressured or tricked CMA into not filing suit until the limitations periods had elapsed. We reject these conclusory allegations.

Finally, after a review of the record, we conclude that the district court properly declined to impose a constructive trust.

The judgment is affirmed.

_____